## Pullman Palace Car Co. v. Lee.

1. *Railroad Companies—Rules—Sleeping Cars.*—A rule of a railroad company requiring a passenger to have a first class ticket for his transportation before he can be assigned to a berth in a sleeping car, is a reasonable one and can be legally enforced.

2. *Ejectment of Passenger from Sleeping Car—Act of Railroad Company.*—A passenger holding a second class passage ticket for his transportation over the lines of a railroad company purchased a sleeping car ticket and gained admission to the sleeping car before the matter was discovered. Holders of second class railroad tickets not being permitted to travel in the sleeping car by the rules of the railroad company, he was ejected by the railroad's employes, assisted by the servant in charge of the sleeping car. In a suit for damages, *it was held* that the expulsion from the car was the act of the railroad company and not of the sleeping car company.

3. *Railroad Companies—Expulsion of Passenger—Show of Force.*— Where a passenger upon a railroad train is ordered to leave the car he is in by the servants of the railroad company, and does so, his right, if any he has, remains the same as if he had been expelled by force from the car.

Memorandum.—Action for damages. Appeal from a judgment for plaintiff, rendered by the Circuit Court of Cumberland County; the Hon. EDMUND D. YOUNGBLOOD, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892. Opinion filed March 6, 1893.

The opinion of the court states the case.

J. S. RUNNELLS and WILLIAM BURRY, attorneys for appellant.

HORACE S. CLARK and LEVI N. BREWER, attorneys for appellee.

OPINION OF THE COURT, WALL, J.

The appellee recovered a judgment for $200, against the appellant.

It was alleged in the declaration that on the 16th of October, 1887, the plaintiff was a passenger on the Pennsylvania Railway, from Indianapolis to Jersey City, having paid his fare to the railroad company, and that he had purchased a ticket from defendant entitling him to ride in defendant's sleeping car between the points above named; that he was shown to his place in the sleeping car by the servants of the defendant, and that the defendant afterward, in violation of his rights, refused to accept the sleeping car ticket or to allow him to ride in said sleeping car, and forcibly removed him therefrom.

The sleeping car ticket expressly provided that it was "good for this date and car only when accompanied by a first class railroad ticket." The plaintiff's railroad ticket was a second class ticket, and he had purchased it at a lower rate than was asked for a first class ticket. The evidence tends to show that he knew it was a regulation of the railroad and sleeping car companies that admission to sleeping cars could not be had on second class tickets, and, whether he so knew or not, such was proved to be the rule. It is not very doubtful, however, that he knew it.

It also appears that it was not customary to sell sleeping car tickets to persons who were not in possession of first class railroad tickets, though it sometimes happened in the rush preceding the immediate departure of a train that sleeping car tickets would be sold without requiring purchasers to exhibit their railroad tickets. It appears from the plaintiff's proof that he exhibited his railroad ticket to the agent of whom he purchased the sleeping car ticket—and this is not directly disproved. There is some attempt to deny that the railroad tickets have been identified, but there is no ground for this position.

It may be assumed that by some means the plaintiff, having and exhibiting a second class railroad ticket, purchased a sleeping car ticket on which was printed the limitation as to its use above stated. He was admitted to the sleeping car and shown to the berth called for by the ticket, but when the sleeping car conductor examined the railroad ticket he

Pullman Palace Car Co. v. Lee.

was informed that he could not ride in the sleeper on that ticket. The railroad conductor soon came and made a similar statement, saying that the railroad ticket was good only in the smoking car. Plaintiff was informed that he could ride in the sleeper by paying the difference between first and second class fare, but he declined to do so and was required to leave the sleeper. He declined to go without some show of force, whereupon a brakeman, who had been sent by the railroad conductor for the purpose, took him by the arm and led him out of the car while the sleeping car conductor laid his hand upon the shoulder of plaintiff's companion (who was situated as he was in respect to tickets) and the two then took their seats in the smoker.

No actual violence was used or was necessary, as the parties seemed to think it sufficient that they were thus required to go out of the car.

Their rights would have been as complete, if they had complied with the order without the show of force as with it. The conductor of the train had the power to enforce his order, and the plaintiff would have lost nothing by going peaceably and without physical coercion, nor could he gain anything by requiring the application of force, really or apparently, to compel him to go. Penn Co. v. Connell, 112 Ill. 295.

While the subject was under discussion in the sleeping car, plaintiff or his companion asked that the money paid for the sleeping car tickets should be refunded, which the sleeping car conductor then declined to do, but afterward, having consulted his instructions and thought of the matter further, went forward to the parties and offered to take up the ticket and refund the money, but they declined the offer.

It appears that the railroad company by its arrangement with the sleeping car company, gets the fare of the passenger for being transported over the road, and that the sleeping car company gets only the pay for the sleeping car accommodations.

The sleeping car and the conductor and porter in charge of it are under the control of the railroad conductor, whose authority is complete.

The railroad company will not permit any person to ride in the sleeping car without a first class ticket, and while it is immaterial to the sleeping car company, yet under its arrangement with the railroad company, it is in duty bound to comply with this regulation, and to refuse to assign a berth to one holding a second class ticket. Whether it does so or not, however, the railroad company has the power to enforce the rule.

Therefore, when the sleeping car conductor informed the plaintiff that the railroad ticket was not good in that car, he was merely doing his duty. It can make no difference that the sleeping car ticket was inadvertently sold to the plaintiff when he had only a second class railroad ticket. At the most, the plaintiff could only ask to surrender his sleeping car ticket and for a return of his money paid for it, and he should have done this in apt time.

If he refused to do this when he had the opportunity he can not complain. He alleged in this declaration, and he was bound to prove, that he was entitled to ride in the sleeper, and that he was unlawfully put out. He failed to prove this allegation; indeed his own evidence disproved it. It appears that the plaintiff was accompanied by Mr. Brody, his attorney, the trip to New York being upon legal business. These men were not inexperienced. They were, probably, familiar with the ordinary usages of modern travel, and as before stated, it is not doubtful from the proof, that they knew a second class railroad ticket is not accepted in sleeping cars. But whether they did or not, the regulation existed, and on being advised of it, they were bound to comply with it.

Had they examined they would have seen the limitation printed on the face of the ticket, and must have known they could not use it with their second class railroad tickets.

If they realized the situation for the first time when they were informed of it by the sleeping car conductor, they were still bound to comply with the regulation, and seek redress to the extent of having the money refunded, provided the sleeping car company was in fault for having sold the sleeping car ticket under the circumstances.

Whether it was so in fault we need not now determine, because, as already noticed, the plaintiff refused to surrender the ticket and receive back his money. All this assumes the regulation referred to is a proper one, as to which there seems to be no serious difference of opinion between counsel.

It does not appear to be an unreasonable rule. Indeed, it is probably necessary to protect the railroad company against the misuse of second class tickets, for without it passengers could buy second class tickets, and get the sleeping car accommodations for about the price of first-class tickets, thereby decreasing the sale of the latter. This to the detriment of the railroad company, and to the advantage of the sleeping car company.

It is also urged that the ejection of plaintiff was, in law and in fact, the act of the railroad company and not of the appellant company. It was so ruled in the case of Lawrence against the same sleeping car company, 144 Mass. 1. There, a regulation of the railroad company denied the passenger the privilege of riding in the sleeping car on the railroad tickets which he had, and the sleeping car conductor refused to sell him a berth for that reason and no other, and co-operated with the railroad conductor in urging him to leave the car, and in finally assisting the latter conductor in the "show of force" which the passenger was waiting for before he would go.

The testimony here seems to present such a case, as to the authority under which the removal was effected. Hence, by the same reasoning, it was really the act of the railroad company, for which the appellant company is not answerable.

But if it can be regarded, in a legal sense, as the act of the latter, there is no reason for saying it was an unlawful act.

We are of opinion the plaintiff failed to establish the cause of action alleged. The judgment will be reversed and the cause remanded.