PULLMAN PALACE CAR CO. ET AL. v. THOMAS W. CAIN.

Delivered March 11, 1897.

1.　**Ejection from Sleeping Car—Liability Therefor.**

When a sleeping car company sold a ticket on a certain sleeper between named points, it undertook to furnish the holder with a berth in that sleeper or another like it during the passage, provided the railroad company hauled it, and is therefore liable to such holder for a failure to furnish such berth for a part of the distance, when the railroad company did haul the sleeper through; and this although the ejection was by the railroad company, and the sleeping car company, under the arrangement between the two companies, could not prevent it.　Pleasants, Associate Justice, dissenting.

2.　**Separate Coach Law—Contract by Negro in Another State.**

A contract by a sleeping car company to carry a negro from another State to a point in Texas is not in contravention of the laws of the State of Texas, since the company did not contract to carry the negro in the same car with white passengers, and he had the right to assume that when the State of Texas was reached he would be furnished with a berth in a coach separate from white passengers.

3.　**Practice—Argument of Counsel—Verdict.**

The use of objectionable language by counsel in argument to the jury is not ground for reversal, where the amount of the verdict shows that the jury were not influenced by it.

4.　**Evidence—Intention of One Ejecting Passenger From Car.**

Where plaintiff left a sleeping car under protest, when directed to do so by a person in authority, in an action for ejection from the car it is proper for him to ask the person ejecting him whether he did not intend to make the plaintiff leave the car, if he had not gone.

APPEAL from Galveston.　Tried below before Hon. WILLIAM H. STEWART.

*Davidson & Minor,* for appellant International & Great Northern Railroad Co.

*Hume & Kleberg,* for appellant Pullman Palace Car Co.—Authorities cited in support of the proposition that the ejection was by the Railway Company, and that the Pullman Company was in no way liable therefor.　Lawrence v. Car Co., 144 Mass., 1, 10 N. E. Rep., 723, 59 Am. Rep., 58; Car Co. v. Lee, 49 Ill. App., 75; Am. Dig. of 1894, 624; Williams Case, 40 La. Ann., 417; Paddock v. Railway, 37 Fed. Rep., 841; Lemon v. Car Co., 52 Fed. Rep., 262; Duvall v. Car Co., 62 Fed. Rep., 265; Hutchinson on Carriers (2 ed.), sec. 617d, citing many cases, and especially in proposition 7, in note 2, p. 737; Blum v. Car Co., 3 Cent. L. Jour., 591.

*Wilfred H. Smith,* for appellee.—Both appellants were under contract with appellee that he would not only sit in and occupy the space purchased by him in the sleeping car Silicia to his destination, but that he would be transported in said car or some like and equal carriage to his point of destination; and the removal of appellee, against his will, by the trainmaster, Gregory, who was the agent in charge of the train, to a car of not equal comfort and convenience, rendered both companies liable. Rev. Stats. (1895), art. 4535; Pullman Co. v. Pollock, 69 Texas, 123; Pullman Co. v. Matthews, 74 Texas, 656; Pullman Co. v. Smith, 79 Texas, 472; Williams Case, 40 La. Ann., 417.

GARRETT, CHIEF JUSTICE.—The appellee, Thomas W. Cain, brought this action in the District Court of Galveston County against the appellants, the Pullman Palace Car Company and the International & Great Northern Railroad Company, to recover damages for wrongful ejection from a sleeping car. He recovered judgment for $100 against both of the appellants in the court below, from which they have appealed.

Appellee is a negro, and is a resident of Galveston, Texas. On September 15, 1893, he was in St. Louis, Missouri, and purchased a first class railroad ticket from that place to Galveston, which called for transportation over different connecting lines of railroad, one of which was the railroad of the appellant International & Great Northern Railroad Company, from Longview, Texas, to Galveston. After appellee had purchased his railroad ticket, he went to the office of the appellant Pullman Palace Car Company and purchased a ticket for transportation to Galveston in one of its sleeping cars. He was given a berth in the car Silicia, and was carried in that car as far as Troup, Texas, a station on the railroad of appellant railroad company. After he had arrived at Troup, the trainmaster of the appellant railroad company, J. C. Gregory, ejected appellee from the sleeping car, and required him to take a seat in one of the ordinary passenger coaches in the train, in an apartment set apart for negroes under the separate coach law of this State. Appellee protested against being removed from the sleeping car, but the trainmaster required him to leave it, and the Pullman porter, at his direction, carried appellee's baggage out after him. The conductor of the sleeping car was present when the appellee was being ejected, and did nothing to prevent his ejection. A rebate of $2 on the sleeping car fare for the balance of the distance was at the time paid to appellee, and accepted by him under protest. There was no division in the sleeping car making separate apartments for white people and negroes.

The evidence showed that, while the trainmaster, Gregory, was present on the train, he had charge thereof as superior in authority to the train conductor, and had authority to determine the right of passengers to transportation in the sleeping car; that the sleeper was as much a part of the train as any other car. The officers of the railroad company had the exclusive right to decide who should occupy space in the

Pullman car, and the servants of the Pullman Company in charge of the car were subject to the orders of the railway officials.

No contract between the railroad company and the Pullman Company for the hauling of the sleeping cars of the latter company was put in evidence, and the conclusions as to the right and authority of the rail-road company over the sleeping car and the servants of the Pullman Company in charge thereof are drawn from the testimony of the wit-nesses. Appellee, when first requested to leave the sleeper, claimed a right to be there as an interstate passenger. This question arises in the record, but neither party has discussed it, and as a majority of the court are of the opinion that the judgment below in favor of the appel-lee may be affirmed, under the law of this State, without regard to the interstate commerce law, that question will not be passed upon.

The Pullman Company contends that the judgment against it is wrong, because all questions with respect to the right of a passenger in the sleeping car to remain there were under the exclusive decision and will of the officer of the railroad company in charge of the train, and that the contract for transportation was with the railroad company, and not with the Pullman Company. Counsel has cited a number of author-ities in support of this position; but the contract of the Pullman Com-pany was for something in addition to and more substantial than the mere right to occupy a berth in a sleeping car. It was also for the right to occupy it during the entire passage to Galveston. As said by Justice Stayton in Pullman Co. v. Pollock, 69 Texas, 121, it was a contract for transportation. The language used in the opinion in that case would impose a greater obligation on the sleeping car companies than many of the authorities do cited from other courts.

Under the contract arising out of the sale of the ticket to appellee, the Pullman Company at least undertook to furnish him with a berth in the sleeper Silicia, or like carriage, during the passage from St. Louis to Galveston, provided the railroad company hauled it. The railroad company did haul the sleeper through, and the Pullman Company failed to furnish the berth in that sleeper, or any other, for a considerable por-tion of the distance. It is said that this was not the fault of the Pull-man Company, since by its arrangement with the railroad company the latter company had charge of the car and servants of the former, and the exclusive right to determine who should ride therein; but this is no answer, for the Pullman Company will not be relieved of its con-tract by an arrangement with the railroad company which prevented it from carrying it out.

It is further contended that the contract was illegal, since it provided for the transportation of a negro in the same car with white passengers, and on that account could not support an action for damages growing out of a breach thereof. As far as the record shows, it was lawful for negroes and whites to ride in the same cars for the entire passage, until the State of Texas was reached. Appellee did not contract for any-thing that was unlawful. He did not contract that he should be car-

ried in the same car with white people, in contravention of the laws of the State of Texas. He had the right to assume that the Pullman Company did not intend to violate the law, and that when the State of Texas was reached he would be furnished with a berth in a coach or apartment of equal comfort and convenience, separate from the white passengers.

The liability of the railroad company arises from the fact that it ejected the appellee from the car without furnishing him another like conveyance, equal in points of comfort and convenience. It may be conceded, although the appellee testified that he was required to sit in a smoking car, that the trainmaster put him in a first-class passenger coach, equal in all points to the first-class coaches occupied by the white passengers, but it was not a sleeping car, and did not have the same arrangements for the comfort and convenience of the passengers that the car had from which the appellee was expelled, and in which white passengers rode.

What we have said, we think, disposes of the first, fifth, sixth, seventh, and eighth assignments of error presented in the brief of the appellant Pullman Company. The second, third, and fourth assignments do not show any material error.

The language of appellee's counsel complained of in the ninth and tenth assignments deserves severe condemnation, but the amount of the verdict shows that the jury were not influenced by it, and the verdict should not be set aside on account thereof.

Both appellants complain of the action of the court in allowing the appellee to ask the witness Gregory if he did not intend to make the appellant leave the car, if he had not gone out. It was proper to show what the intention of Gregory was, and there was no error in permitting appellee to show it.

The evidence showed that the appellee had a railroad ticket for through transportation over the connecting lines, including that of the International & Great Northern Railroad, from St. Louis to Galveston; that at St. Louis he made the contract for a berth in a Pullman car for the entire passage; and that the Pullman car was a part of the train, under some arrangement between the appellants for the railroad company to haul the same; also, that, when the trainmaster was present on a train, he was the superior to the train conductor, and his orders were obeyed; that although the sleeper was marked, "For Whites," it was the property of the Pullman Company, had no partition in it to separate white from negro passengers, and that there was no other car in the train equal in point of comfort and convenience going to Galveston for appellee to ride in—in fact, no sleeping car for negroes. Such being the facts, there was no error in the charge of the court complained of under the third assignment of error in the brief of the International & Great Northern Railroad Company.

We find no error in the charge of the court requiring a reversal of the judgment. Nor was there any error in refusing the several instructions

asked by counsel for the railroad company.   It is not necessary to notice the assignments in detail, as what has already been said shows the reasons why the charges asked should have been refused.   Appellee did not voluntarily leave the car.   The evidence shows that he was required to go and left under protest.

The judgment of the court below is affirmed.          *Affirmed.*

PLEASANTS, ASSOCIATE JUSTICE.—I am unable to concur in the decision rendered by this court, in so far as it affirms the judgment of the lower court rendered for appellee against the appellant the Pullman Palace Car Company, and respectfully dissent from the conclusion reached by the majority of the court.

I dissent because I think the decision is supported neither by reason nor by authority.   Not a single adjudicated case is cited in the opinion which sustains the proposition upon which the opinion is based, to-wit, that by the sale to appellee, by the agent of the appellant, in the city of St. Louis, of a sleeping-car ticket which reads; substantially: "Car Silicia from St. Louis to Galveston; Conductor McGlasson; berth, upper No. 2," —the appellant obligated itself, jointly with its co-appellant, the International & Great Northern Railroad Company, to transport the appellee to Galveston in the said car Silicia, or in one of equal accommodations and comfort.   The opinion cites (and it is its only citation of authority) language used by the Supreme Court of this State in the case of Car Co. v. Pollock, 69 Texas, 120,—a case in which another and different question was involved than the one presented here.   In that case the question was whether or not the Palace Car Company was liable to a passenger occupying a berth on its car for the loss of his baggage by theft, through the negligence of the servants of the car company, and without negligence on the part of the passenger; and the court held, in conformity to the decisions of the courts of other jurisdictions, without exception, I think, that the owner of the car was liable.

The sale by the owner of a berth in a palace car is, it is said, an invitation to the passenger to sleep, with an implied promise on the part of the proprietor of the car that, while the passenger sleeps, reasonable care will be taken to protect his property—including wearing apparel, as much baggage as is usually carried by passengers in their hands, and a reasonable amount of money for his expenses—from thieves and burglars.   From this decision of our Supreme Court, which imposes but a limited liability upon the owners of sleeping cars, and which expressly declares that they are not charged with the duties or responsibilities of either common carriers or innkeepers, we are authorized, in the opinion of this court, to affirm the judgment of the lower court awarding damages to appellee against the palace car company for the act of its codefendant in ejecting the appellee from the sleeper, and in failing to provide him with another car with like comforts and conveniences.   Such a conclusion is, in my judgement, clearly a non sequitur.   The decision

in the case of Car Co. v. Pollock is not authority for the decision ren-dered in this case.

The question in this case is, if a traveler procures a contract, by the purchase of the customary ticket from a railway company, for his trans-portation to a distant city, and then purchases from the owner of a sleeping car, which is one of the cars composing the train then on the track of the railroad company, a ticket which entitles him to occupy a berth on that sleeper during his journey, and who well knows that it is a sine qua non for the sale to him of a berth in the sleeper that he first procure a contract with the railway company for transportation upon its train of cars, and when the evidence shows beyond cavil that the sleeper and the conductor and porter are all under the control of the railroad officials, can such passenger hold the owner of the sleeper liable for in-juries suffered by the passenger by the acts of the railroad company?

To state the question, it seems to me, is to answer it in the negative. There are a number of adjudicated cases by courts of high respecta-bility in which it is held that the servants of the owner of a sleep-ing car, who are employed by the owner and placed upon the car for the purpose of ministering to the wants and comforts of passen-gers who occupy the sleeper, are all subject to the orders of the con-ductor or other official in command of the train, and that the acts of the servants upon the sleeper are the acts of the railroad company, and not the acts of the owner of the sleeping car, and that the railroads, acting through their officials, have the right to determine who shall occupy the palace cars, and upon what conditions.

In Lawrence v. Car Co., 144 Mass, 1, it was held that the Pullman Company was not liable for the act of its conductor in refusing to sell a berth to a passenger in violation of a rule of the railway company, nor for aiding in ejecting the passenger from the car by order of the conductor of the train. To the same effect is the decision in the case of Car Co. v. Lee, 49 Ill. App., 75. These decisions hold that the acts of the servants and officers of the Pullman car are the acts of the rail-road company, and not the acts of the Pullman Company.

If the Pullman Company is not responsible for the acts of its servants done in obedience to the orders of the railroad officials, how can the Pullman Company be held responsible for the same acts when commit-ted by the railroad officials? Such decisions can only be made upon the ground that by selling to a passenger who holds a ticket from a railroad for his transportation the privilege of occupying a berth in one of its sleeping cars, which is a part of the railroad train, the owner of the sleeper does not contract for the transportation of the sleeper or of the passenger, but contracts only to furnish the passenger with the accom-modations and comforts of the sleeper so long as the railroad company will transport him therein.

This was the decision in the case of Duvall v. Car Co. (decided by the Circuit Court of the United States for the Western District of Texas on appeal from the District Court of that district). 10 Cir. Ct. App.,

331, 62 Fed. Rep., 265. The plaintiff, Mrs. Duvall, an aged lady and a cripple, being unable to walk, was in Denver, Colorado, with her daughter, and, wishing to return to her home, in Austin, Texas, purchased a ticket from Denver to Fort Worth over the Union Pacific Railway Company, and also a ticket from the Pullman Palace Car Company entitling her to the use of the drawing room of one of its cars, which was then attached to the train of the Union Pacific Company. She entered the drawing room of the car, and started from Denver in the afternoon of the 27th of September, and at the hour of 12 o'clock in the night of that day she and her daughter were compelled by the conductor and porter of the car, acting under orders of the railroad officials, to leave their beds, and go from the car and take lodgings in an inferior car, the accommodations of which were unsuitable for an aged and invalid lady, where she was compelled to remain for 24 hours. The train on which she had left Denver, by reason of washouts on the road between the point at which she was forced to leave the sleeper and Fort Worth, was ordered by the officials of the railroad to return to Denver; and, upon the arrival of the next train from Denver for Fort Worth, Mrs. Duvall was taken aboard. But she was unable to return to the drawing room of the sleeper from which she had been ejected on the previous night, there being no car with a drawing room attached to the train, and, when she applied for berths in the sleeper for herself and daughter, she was informed that all the berths but one—and that one was in the upper tier of berths—were occupied; and she was compelled to ride from midnight until the train reached Fort Worth, at 1 o'clock next day, in an ordinary day coach. The evidence showed, also, that when the officer of the Pullman Company sold the ticket, Mrs. Duvall's condition was made known to him, and he was expressly informed that unless she could have the occupancy of the drawing room of the car, Mrs. Duvall, in her enfeebled condition, would not undertake the trip; and that she was unable to sleep in the inn in which she was compelled to remain, or on the coach in which she subsequently rode to Fort Worth; and that she suffered, in consequence, great pain. The District Court upon these facts, ordered the jury to return a verdict for the defendant, and upon appeal to the Circuit Court the judgment was affirmed; that court holding, under the facts (which were similar to the facts of this case), that the Pullman Company, by sale to the appellant of a ticket giving her the right to occupy the drawing room of the car, did not contract for her conveyance to Fort Worth in that or in any other car, but it only contracted for her use and occupancy of the drawing room so long as the railroad company would convey the car.

I do not dissent from the views expressed in the opinion touching the liability of the other appellant, the International & Great Northern Railroad Company. That company by its connections with the railway which undertook and agreed to convey the appellee from St. Louis to Galveston in a sleeper, made itself subject to the provisions of the

interstate commerce law; and under that law, as I construe the first and third sections of the act of Congress entitled "An act to regulate commerce," approved February 4, 1887, as amended by act of March 2, 1889, the International & Great Northern Railroad Company were under obligations, when they removed the appellee from the car Silicia, as it was their duty to do in obedience to the statute of Texas, to furnish him with a berth and other accommodations equal to those of which they deprived him by his ejection from the sleeper, and for which he paid when he purchased the ticket from the Pullman Company in St. Louis.

The contention of appellant that the railway which sold to appellee, in St. Louis, a ticket for transportation over its road, and the railroads in connection with it, to Galveston, could not bind appellant to carry appellee in a car set apart for the exclusive use of white passengers, and which was occupied by such passengers, because such contract was a violation of the laws of Texas, may be conceded. But the contractual relations of the two railway companies subjected the appellant, as we have said, to the provisions of the interstate commerce act, which forbids discrimination between passengers. And the law of Texas does not prohibit railways from carrying negroes in sleeping or palace cars. It only prohibits the carrying of white and negro passengers in the same car. And the appellee, in his pleadings, does not deny that it was the right of appellant to remove him from the car Silicia, provided he was furnished with equal accommodations and comfort for which he had contracted in St. Louis. It seems clear, therefore, that the appellant railway is liable for appellee for failing to provide him with like accommodations as those offered by the sleeper from which he was ejected.

For the error of the lower court in holding the Pullman Palace Car Company liable in damages for the act of the appellant the International & Great Northern Railroad Company, the judgment, in my opinion, should be reversed, and the cause remanded.

ON MOTION FOR REHEARING.

GARRETT, Chief Justice.—After a careful consideration of the motions for a rehearing in this case by both of the appellants, we are of opinion that our decision is right. We have had less difficulty about the liability of the railroad company than that of the sleeping car company; but we are of the opinion that, when the latter company sold the ticket to the appellee, there was an immediate undertaking on his part, by reason of the arrangement between it and the railroad company, that the railroad company would not wrongfully interfere with appellee's right to a continuous passage through to his destination in the sleeping car.

Both motions are overruled.                    *Rehearing denied.*

April 22, 1897.