DUVAL et al. v. PULLMAN PALACE–CAR CO.[1]

(Circuit Court of Appeals, Fifth Circuit. May 29, 1894.)

No. 180.

**1. CARRIERS—PALACE-CAR COMPANIES—LIABILITIES TO PASSENGERS.**
Plaintiffs, having tickets for passage over a railroad, purchased **from a** palace-car company a ticket for the drawing-room of one of its cars, part of a railroad train going to their destination. Before arriving there the train was turned back by the railroad officials, because of a washout on the road, and plaintiffs were ejected from the car by order of the conductor of the train. By contract between the palace-car company and the railroad company, the drawing-room car was operated and controlled by the railroad company. *Held,* that plaintiffs could not recover damages from the palace-car company as for breach of a contract to convey them to their destination, that company not being a common carrier of passengers for hire, and having made no contract to carry; its obligation being only

[1] Rehearing pending.

to accommodate them with the drawing-room in its car so long as the carrier would convey it.

2. SAME—EVIDENCE.
In an action for such damages, evidence as to the relations existing between defendant and the railroad company respecting the car, and that the railroad officials ordered it to be turned back and plaintiffs to be put out, was admissible, as it did not vary the written contract between plaintiffs and defendant.

In Error to the Circuit Court of the United States for the Western District of Texas.

These were two actions, one by Laura P. Duval, the other by Mary D. Maddox and her husband, against the Pullman Palace-Car Company, brought in a court of the state of Texas, and removed therefrom by defendant to the circuit court of the United States, and there consolidated. At the trial the court instructed the jury to find for defendant. Judgment for defendant was entered on the verdict. Plaintiffs brought error.

West & Cochran and John W. Maddox (Robert G. West, of counsel), for plaintiffs in error.

Percy Roberts, for defendant in error.

Before PARDEE, Circuit Judge, and TOULMIN, District Judge.

TOULMIN, District Judge. Laura P. Duval and Mary D. Maddox, joined by her husband, John W. Maddox, brought their separate suits against the Pullman Palace-Car Company in the district court of Travis county, Tex., and upon petition of defendant in error the cases were removed to the United States circuit court for the fifth circuit and western district of Texas, at Austin, where they were consolidated by agreement; and at the trial, upon a peremptory instruction from the court, the jury found for the defendant company, and judgment was entered accordingly. The two cases arose out of the same state of facts, which, briefly stated, are as follows:

Plaintiff Duval, on September 27, 1891, was in Denver, in a crippled and helpless condition, unable to walk, and suffering from an accident, and was then 75 years of age. Plaintiff Mary D. Maddox was her daughter, and was with her mother on the day named, and also had with her a little daughter just recovering from a spell of fever. The parties desired to return to their home, in Austin, Tex., but would not attempt the journey unless they could procure the drawing-room of one of defendant's sleeping cars, because of their suffering and helpless condition, and so informed defendant's agent at Denver, when and from whom they bought their ticket. On the day named the plaintiffs, together, bought a ticket from defendant's agent at Denver, paying $20 therefor, which entitled them to the exclusive use of the drawing-room of defendant's car Ysadora, then attached to a train of the Union Pacific Railway Company en route to Ft. Worth, Tex., upon which train plaintiffs had purchased and held first-class tickets, entitling them to transportation by the railroad company from Denver, Colo., to Ft. Worth, Tex. On the ticket procured from the de-

fendant's agent were the following words: "Good for this date and car only when accompanied by first-class railroad ticket from Denver to Ft. Worth in the drawing-room of the car Ysadora,"—which ticket was stamped on the back with the date of September 27, 1891. The plaintiffs entered and were given possession of the drawing-room of said car by the defendant's conductor and porter in charge, and rode therein to Texline, when, at about 12 o'clock on the night of September 27th, they were required by defendant's said conductor and porter to get up and dress, and leave the said car, and find accommodation at a small hotel in Texline,—a small station in a sparsely-settled region of country. At this hotel they were unable to get a comfortable bed or food, and were unable to sleep during the night or the day following, during which time plaintiff Duval suffered much pain from her injuries. It was shown that the train was turned back at Texline by command of the Union Pacific Railroad officials, because of a washout at the Canadian river, about 100 miles further down the road, and that, in turning plaintiffs out of the drawing room, defendant's conductor and porter were acting under orders from the train conductor. On the night following, at about 12 o'clock, the next train from Denver arrived, and the passengers of the previous train were permitted to get on board; and as plaintiffs held a transfer check issued to them by defendant's conductor in charge of the car Ysadora, showing their right to complete their journey in the drawing-room of the defendant's car attached to the next train, they applied to defendant's conductor in charge of the car attached, and were told by him that his car had no drawing-room, and that he had but one berth unoccupied, which was an upper berth. In this car there was the gentlemen's smoking-room, with accommodations for a bed for one, and a comfortable double seat, unoccupied, save by the conductor and porter. This compartment was not tendered plaintiffs after notice to the conductor of their condition and claim, and they were compelled to enter the ordinary day coaches of the train, and ride therein from 12 o'clock of the night of September 28th until they reached the Canadian river, at 7 o'clock next morning. The defendant proved that in carrying on its business it had no motive power to haul its cars, but made contracts with the railroad companies, by which it attached its cars to the railroad trains, and having read in evidence the written contract between it and the different railroad companies owning the line of road extending from Denver via Texline to Ft. Worth, under and by virtue of which its cars were attached to the Union Pacific trains en route from Denver to Ft. Worth, proved that the defendant's sleeping or drawing-room car Ysadora was attached to the train of the said Union Pacific Railroad Company en route from Denver to Ft. Worth on the 27th of September, 1891, and that the car was turned back from Texline by order of the railroad officers, given to the train conductor, and by him to the conductor of the sleeping car. The defendant also proved by its district superintendent that under its contract with the railroad companies the latter controlled the defendant's cars, and its agents and servants in charge of them,

and that the railroad companies decided and directed how many and what sleeping cars should be attached to their trains.

This suit claims damages for a breach of contract. The complaint avers that the defendant was engaged in the business of carrying passengers, as a common carrier for hire, by means of railroad cars running between the cities of Denver, in the state of Colorado, and Ft. Worth, in the state of Texas; that the plaintiffs, on the 27th of September, 1891, engaged passage and purchased tickets over the line of railway traversed by defendant's cars, from Denver to Ft. Worth; that defendant entered into a contract to convey them over said line of road comfortably and securely. That defendant, in violation of its contract with plaintiffs, and in violation of their rights and privileges in the premises, refused to convey them beyond the town of Texline on said line of railroad between Denver and Ft. Worth, and did so under such circumstances as to entitle the plaintiffs not only to actual, but exemplary, damages. The proof shows that plaintiffs did not make any contract with the defendant to convey them from Denver to Ft. Worth, and it shows that the defendant was not engaged in the business of carrying passengers, as a common carrier for hire, between said cities. But it shows that plaintiffs, on the day named, purchased and held first-class tickets entitling them to transportation by the Union Pacific Railroad Company from Denver, Colo., to Ft. Worth, Tex., and that on the same day they procured from defendant a ticket good for that date and car in the drawing-room of defendant's car Ysadora, which was a part of the Union Pacific Railroad train going from Denver to Ft. Worth, on which plaintiffs were to be transported. It shows that the train was turned back at Texline, by command of the Union Pacific Railroad officials, because of a washout further down the road, and that it was under the orders of the train conductor that the plaintiffs were turned out of the car Ysadora, and against the objection or protest of the conductor of the car. The proof also shows that the defendant's said drawing-room or sleeping car was operated by, and was under the direction and control of, the Union Pacific Railroad Company. The plaintiffs objected to the evidence introduced to show that the defendant's drawing-room or sleeping cars used ·by the said railroad company were operated and controlled by the railroad company, and subject exclusively to its direction, and that this particular car was so operated and controlled, and also objected to the evidence that the railroad officials ordered the said car to be turned back, and the plaintiffs to be put out, at Texline. The trial court overruled plaintiffs' said objections, to which they excepted, and now, among other things, assign the same as error.

As we understand it, the purpose of the evidence objected to was to show the character and extent of the control of the movements and management of the defendant's car attached to the Union Pacific Railroad train, and operated by the railroad company. It did not in any way alter or vary the written contract in evidence, but, in substance and effect, was that the car Ysadora was controlled by the railroad company, in its operation and movements,

under the said contract. In other words, it was to show what were the true relations existing between the defendant and the railroad company respecting said car. We do not think the court erred in admitting this evidence.

The only other assignment of error we consider it necessary to notice is that presented on the court's peremptory instruction to the jury to return a verdict for the defendant. The allegations of the complaint were not sustained by the evidence. The defendant company is not liable as a carrier. It made no contract to carry. The plaintiffs had paid their fare to the railroad company, and were provided with first-class tickets entitling them to be carried from Denver to Ft. Worth by it. It was the duty of the railroad company to convey them over its line, and they were being carried by it. The defendant's sleeping car constituted a part of the carrier's train. The plaintiffs secured the privilege of riding in this car by paying an additional sum to the defendant. The obligation of the defendant, under its contract with the plaintiffs, was to accommodate them with the drawing-room in its car, constituting a part of the carrier's train, as long as the carrier would convey it. If the carrier refused to convey it beyond Texline, and turned the car back to Denver, these were not the acts of the defendant company, and they would form no basis for the complaint against it in this suit. Railroad Co. v. Roy, 102 U. S. 451.

Our opinion is that there was no error in the instruction given, and therefore none in the refusal to charge the jury as requested by the plaintiffs. Judgment is affirmed.