PULLMAN'S PALACE–CAR CO. v. KING.

(Circuit Court of Appeals, Second Circuit. January 9, 1900.)

No. 57.

1. CARRIERS—SLEEPING-CAR COMPANIES—BREACH OF CONTRACT.

Plaintiff, having a railroad coupon ticket for passage from New Orleans to New York over connecting lines of road, on application to an agent of defendant, and on showing his ticket, was sold a berth in a sleeping car from New Orleans to Jersey City. From Washington to Jersey City such car was run over a line different from that named in plaintiff's ticket, and on his refusing to pay fare he was ejected by the

employés of the railroad company. *Held*, that defendant, by selling plaintiff accommodations in a particular car, virtually represented and warranted that such car passed over the lines named in plaintiff's ticket, and was liable for a breach of the contract when plaintiff, under the circumstances stated, was compelled to leave the car before reaching Jersey City.[1]

**2. Same—Measure of Damages.**

Plaintiff having been rightfully ejected by the employés of the railroad company from a car in which, under his contract with defendant, he was entitled to remain without payment of further fare, defendant was liable, not only for the direct, but also for the consequential, damages, which should have been anticipated as the natural and probable result of its breach of the contract, subject to the limitation that the damages recoverable could not be enhanced by the negligence or willful conduct of the plaintiff.

**3. Same.**

There being evidence to warrant a finding that plaintiff was not chargeable with notice, before leaving Washington, that the car would not go over the road named in his ticket, such question was properly submitted to the jury under instructions which, in case of such finding, permitted a recovery, not only for the increased expense to which plaintiff was subjected, but also compensation for the inconvenience and loss of time, and for the indignity of a public expulsion from the car.

Wallace, Circuit Judge, dissenting upon the question of damages, on the facts shown in regard to notice, and upon the further ground that plaintiff was not entitled to enhanced damages because of his forcible ejection from the car, which he might have avoided, without a waiver of any of his rights, by payment of his fare, or by leaving the car without force, upon the conductor's refusal to permit him to remain without such payment.

Wallace, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of New York.

This cause comes here upon a writ of error to review a judgment in favor of defendant in error, who was plaintiff below, upon the verdict of a jury awarding him $2,000 for damages for ejection from a sleeping car of the plaintiff in error, who was defendant below. Plaintiff had a round-trip railroad ticket from New York to San Francisco and return, which provided for passage from Washington to New York via the Baltimore & Ohio Railroad. In New Orleans, plaintiff showed this ticket to defendant's agent, and asked for through accommodations on a sleeping car from New Orleans to New York. The agent sold him a berth ticket for the car Dioces from New Orleans to Jersey City. From Washington north, the car Dioces was run over the Pennsylvania Railroad. Plaintiff, having no railroad ticket for that line, was put off the train at Baltimore by the Pennsylvania conductor upon his refusal to pay railroad fare from Washington to New York.

Allan McCulloch, for plaintiff in error.

Samuel H. Wandell, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The majority of the court concur in the opinion that the evidence sustains the conclusion that defendant contracted to furnish to plaintiff the accommodation of its sleeping car Dioces from New Orleans to Jersey City, and warranted that, upon presenting his round-trip ticket to the train conductor, he should be

---

[1] As to duties and liabilities of sleeping-car companies, see notes to **Duval v. Car Co.**, 10 C. C. A. 335, and **Edmunson v. Car Co.**, 34 C. C. A. 386.

allowed to ride undisturbed the whole distance in that car, without being required to make any further payment for transportation, and that such contract was broken by the defendant. It seems unnecessary to add anything to the exhaustive discussion of this branch of the case which will be found in the opinion of Judge WALLACE.

Upon the question of damages in cases of this kind, it is also well settled that if the plaintiff, by negligence or willfulness, allows his damages to be unnecessarily enhanced, he cannot thereby augment his recovery. But, where there has been no negligence or willfulness on the part of the plaintiff, he may recover not only the increased expense to which he may be subjected, but also compensation for inconvenience and loss of time, and for the indignity of a public expulsion from the car. English v. Canal Co., 66 N. Y. 454; Murdock v. Railroad Co., 137 Mass. 293. In this latter case a verdict for $4,500 was sustained, the case being distinguished from the earlier decision of the same court in Bradshaw v. Railroad Co., 135 Mass. 407, upon the theory that in the earlier case plaintiff was negligent in accepting without examination a ticket which was on its face insufficient to secure him the accommodation he expected to obtain.

Upon the question of damages the court in the cause at bar charged:

"Of course, there is no physical injury here, beyond the invasion of a right. If there wasn't anything more than the conductor putting his hands upon him, it would be a matter of nominal damages. But, if Mr. King was in the right, there is something more than that, or at least it is for you to say. A man ejected from a car, a man whose rights have been invaded, may, if the jury so find it, be regarded as having suffered from a sense of indignity ('insult,' as the plaintiff puts it),—endured that mental suffering, mental grievance, which all men can appreciate, and yet which is so difficult to describe; and for that he would be entitled to recover damages. But please remember that under no circumstances in this case are you to give damages as smart money. You are not to give any exemplary damages. You are not to say, 'We are going to punish this railway company.' This is not a case of that nature. You can compensate Mr. King, if you feel, under the instructions I have given, that he is entitled to it, fully for the indignity and mental distress of which I have spoken. You can also compensate him for any expense to which he has been subjected. I don't know as there is any evidence on that subject, but it would be at least the value of a ticket from Baltimore to New York."

The court also charged, upon defendant's request, that:

"If you find that the plaintiff was advised before reaching Washington that he could at that point take a train over the line of the Baltimore & Ohio Railroad, which would arrive at Jersey City at about the same time as the train he was then on, and if you further find that there was such a train, and that by the use of due diligence the plaintiff could have caught said train, it was the duty of plaintiff to use such due diligence; and there can be no recovery for any damages for delay arising from his failure to do so, provided he had notice that the car was not going over the Baltimore & Ohio road."

And that:

"It doesn't make any difference where he got the notice, if he received notice from any source which was sufficient to have put a man of ordinary prudence upon his guard, so that he should have investigated the matter and acted accordingly."

The court further charged, upon defendant's request, that:

"If you find that before defendant's car left Washington the plaintiff knew or had reason to believe that he had no railroad ticket entitling him to a passage over the lines of the Pennsylvania Railroad from Washington to Jersey City, and that he knew or had reason to believe that defendant's car would run over the lines of the Pennsylvania Railroad between said points, it was contributory negligence of the plaintiff to remain on the car without procuring right of transportation on that train, which precludes a recovery; that is, from Washington to New York."

This part of the charge was more favorable to defendant than it was entitled to. Such contributory negligence would only preclude recovery for anything in excess of the cost of the additional railroad fare.

This was a complete and accurate presentation of the case as to the measure of damages, if there was evidence from which the jury were entitled to find that plaintiff was not informed before leaving Washington that the Dioces would be carried over a line of railroad (the Pennsylvania) on which the return-trip ticket did not entitle him to transportation. The soundness of the charge is challenged upon the theory that there was no such conflict of evidence. As to any notification being given him by the sleeping-car conductor, there was a flat contradiction between the plaintiff and the conductor, and the notification relied on is a chance remark of plaintiff's traveling companion, Ruttman. The entire evidence on this point is that of the plaintiff, as follows:

"No notice was given to me at any time from the time I purchased my ticket before I arrived at Washington, or after my arrival at Washington, that I would be obliged to change this car,—no notice that I was to go on the Pennsylvania Railroad. Mr. Ruttman spoke to me about the subject the night before. None of the railway people gave me any notice of any kind. The night before, Mr. Ruttman said to me that the car was going to run over the Pennsylvania road. I said that didn't make any difference. That was the evening before we reached Washington,—Sunday evening. I was not notified to change at Washington by any railroad official or any sleeping-car official. When I left Washington I didn't know, as a matter of fact, whether I was on the B. & O. or Pennsylvania, and I was not notified by anybody."

Ruttman was a witness, but was not questioned by either side as to his conversation with plaintiff. We do not think that, upon this state of the proof, it was the duty of the court to charge the jury that the plaintiff knew before the car reached Washington that it was going to be run on a road over which he had no ticket good for transportation, and that therefore he could not recover more than the additional fare. The disposition made of this branch of the case by the court seems to us the correct one, viz. leaving it to the jury to say whether plaintiff knew of this change from the Baltimore & Ohio to the Pennsylvania, or had received notice from any source which was sufficient to have put a man of ordinary prudence upon his guard, so that he should have investigated the matter and acted accordingly, with instructions that his remaining in the car after such notice, without procuring right of transportation, would be contributory negligence. Upon the evidence, it seems to us this was the utmost defendant could demand. The judgment is affirmed.

WALLACE, Circuit Judge (dissenting). This is a writ of error by the defendant in the court below to review a judgment entered upon a verdict for the plaintiff. The action was brought to recover damages for the ejection of plaintiff from one of the defendant's sleeping cars. Upon the trial, evidence was introduced showing the following facts: The plaintiff had made a trip from New York to San Francisco upon a round-trip ticket, with coupons attached, entitling him to passage to and from those cities over various connecting railway lines. The last coupon was for one first-class passage from Washington to New York over the Baltimore & Ohio Railroad. On his return trip he went to the office of the defendant at New Orleans, and asked the agent for a lower berth to New York. According to his testimony, the agent asked him for his railroad ticket; plaintiff showed it to him, the last coupon being attached; and the agent took it, examined it, and then sold him a berth ticket for the car Dioces from New Orleans to Jersey City, the terminal for New York. The berth ticket had printed on its face, "Good for this date and car only when accompanied by a first-class ticket." The plaintiff took passage upon the car, and the defendant's conductor took up the berth ticket. Before the car reached Washington, plaintiff was informed that from that city the car would go over the Pennsylvania Railroad. The cars of the defendant were run from Washington over the Baltimore & Ohio Railroad, and also over the Pennsylvania Railroad. The Dioces was run over the latter line. When the train reached Washington, plaintiff was asleep; but he then awoke and dressed, and found the car moving out of the city. Subsequently the train conductor called for his ticket. He handed it to him, and the conductor then told him that the ticket was not good for that road, and refused to accept the coupon for passage by the Baltimore & Ohio Railroad. The plaintiff declined to pay fare, and, upon his refusal to leave the car when the train reached Baltimore, the train conductor directed him to be removed. At Baltimore he was delayed until he was able to take a train over the Baltimore & Ohio Railroad for New York.

At the close of the evidence the defendant requested the court to direct a verdict in its favor upon the ground that the plaintiff was ejected by the employés of the Pennsylvania Railroad, and these were not servants of the defendant, and upon the further ground that the sleeping-car ticket did not entitle plaintiff to transportation in the car over the Pennsylvania Railroad, and he was rightfully ejected for not paying fare. The trial judge refused the request. The trial judge also denied a request by the defendant for instructions to the jury that if they found that plaintiff refused to leave the car without the application of force, and that no more force was used in expelling him than was necessary for that purpose, there could be no recovery against the defendant for damages occasioned by the use of such force. The exceptions to these several rulings raise all the important questions presented by the assignments of error.

Upon the facts the jury was justified in finding that the defendant undertook, for a compensation received, to furnish the plaintiff

the accommodations of the sleeping car from New Orleans to Jersey City. It in effect represented to him, by its agent, that the car would go by the line of the Baltimore & Ohio Railroad, because by. showing him his ticket the plaintiff virtually informed the agent that he proposed to go by that line. The representation was in the nature of a warranty, and the contract may therefore be treated as embodying it, as a part of its terms. It is plain that this contract has been broken if the plaintiff was without just cause compelled by the defendant, or those for whose acts it was responsible, to leave the car at any time before reaching Jersey City; and in that event he was entitled to recover for the breach, as he could if he had been wrongfully ejected by a common carrier of passengers or by an innkeeper.

The proprietor of a sleeping car is not, however, a common carrier of passengers, nor an innkeeper. 22 Am. & Eng. Enc. Law, 797. And the liability of the sleeping-car corporation rests upon the breach of its implied obligation to furnish the accommodations which it holds itself out as offering to the public. It does not hold itself out as offering to supply the motive power for the transportation of passengers, or any of the instrumentalities or facilities for the management of the train. The passenger understands that these are to be supplied by the railway company of which he has bought or is to buy his ticket, and that, unless he complies with the proper rules and regulations of the railway company in respect to the payment of fare, he is not entitled to be carried, and may be ejected from the car. Lemon v. Car Co. (C. C.) 52 Fed. 262; Duval v. Same, 10 C. C. A. 331, 62 Fed. 265, 33 L. R. A. 715. In Ulrich v. Railroad Co., 108 N. Y. 80, 15 N. E. 60, the court observed that the purchase of a ticket for a seat in a drawing-room car has no effect upon the status of the purchaser as a passenger, and said:

"The contract for a seat did not make the purchaser a passenger, in any sense; but it simply provided that, if the purchaser secured a right to ride on the train, he could also enjoy the advantages of a specific seat during the trip, if he so desired."

The plaintiff knew, or the law presumes he knew, when he bought the sleeping-car ticket, that he could not be carried in the car over the line of the Pennsylvania Railroad unless he had a ticket entitling him to passage, or unless he should pay his fare. He did not know, and was under no obligation to assume, that the car would run from Washington over that line. The defendant's contract was broken when the car reached Washington, because from that time the car did not go over the Baltimore & Ohio Railroad; and the plaintiff was not entitled to occupy it, except as a passenger of the Pennsylvania Railroad, paying passenger's fare.

It is not material whether he was compelled to leave the car by the employés of the railway company or by those of the defendant; and it may be conceded that, when employés of a sleeping-car company are enforcing the rules and regulations of the railroad company in ejecting passengers for refusal to pay fare, they are the servants of the railway company, and the ejection is its act, and not that of the sleeping-car company. Car Co. v. Lee, 49 Ill. App. 75;

99 F.—25

Lawrence v. Car Co., 144 Mass. 1, 10 N. E. 723. Having broken its contract by putting the plaintiff where he could not rightfully remain without submitting to an exaction not contained in his contract, the defendant became responsible, not only for the direct, but also for the consequential, damages which should have been anticipated as the natural and probable sequence. The defendant would not have been liable for the wrongful acts of the employés of the Pennsylvania Railroad, but it was liable for their rightful acts in requiring him to vacate the car, because its breach of obligation was the cause which necessarily set those acts in motion. As respects the railway carrier, the plaintiff was rightfully ejected for refusal to pay his fare; but, as respects the defendant, he was not under obligation to pay it, and the defendant was responsible for the legitimate consequences of his refusal to pay fare. The trial judge was correct in so ruling, and in refusing to direct a verdict for the defendant upon any of the grounds assigned.

The ruling upon the question of damages remains to be considered. The general rule that a party who has been injured by the tort or breach of contract of another cannot aggravate the damages by his own willful and unnecessary conduct, but can recover of the delinquent such damages only as with reasonable effort upon his own part could not have been prevented, is familiar. The law imposes upon him an active duty to exert himself to make the damages as light as possible; and if, by negligence or willfulness, he allows them to be unnecessarily enhanced, he cannot thereby augment his recovery. Dolph v. Machinery Co. (C. C.) 28 Fed. 558; Costigan v. Railroad Co., 2 Denio, 609; Hamilton v. McPherson, 28 N. Y. 72; Milton v. Steamboat Co., 37 N. Y. 210; Warren v. Stoddart, 105 U. S. 224, 26 L. Ed. 1117; The Baltimore, 8 Wall. 377, 19 L. Ed. 463; Dodd v. Jones, 137 Mass. 322. The rule has been applied in several adjudged cases between passengers and railway carriers. In Hall v. Railroad Co. (C. C.) 15 Fed. 57, the plaintiff had bought a ticket of the defendant's ticket agent, upon its face good only for a specified period, upon the representation of the agent that the limitation would not be enforced. Having offered it at a later date, the conductor of the train refused to accept it, and, the plaintiff refusing to pay his fare to the next station, he was put off the train by force. The action was brought for the injuries sustained by his forcible expulsion. The court held that the conductor was justified in his conduct, and that the plaintiff could not recover for the expulsion, but only for the price of the ticket. In Poulin v. Railroad Co., 6 U. S. App. 298, 3 C. C. A. 23, 52 Fed. 197, 17 L. R. A. 800, where a ticket agent had negligently furnished a ticket which did not purport to be one for the trip for which it was purchased, and the passenger discovered the mistake before going upon the train, it was held that the passenger was bound to know that the conductor would be justified in refusing to receive it, and under such circumstances, if he chose to incur the risk of expulsion from the train by taking passage with the ticket, could not, when expelled, recover in tort. In Frederick v. Railroad Co., 37 Mich. 342, it was held that a passenger to whom a ticket agent had sold a wrong ticket, and who was compelled

by the conductor to relinquish his seat or pay his fare, could recover against the railway carrier for breach of contract, but not in trespass for ejecting him. In Railroad Co. v. Griffin, 68 Ill. 499, where a passenger had paid for a ticket to a certain station, and the agent had inadvertently given him a ticket to an intermediate station, it was held that the demand for another ticket by the conductor was the breach of the implied contract on the part of the company to carry him to the proper station, but that his remedy in such a case was for breach of the contract. The court said:

"By paying such a demand, his cause of action would be as complete as if he resists the·demand and suffers himself to be ejected, and his rejection in such a case will add nothing to his cause of action."

In Railroad Co. v. Pierce, 47 Mich. 277, 11 N. W. 157, it was held that a passenger taking a train, by the direction of an agent of the company, which did not stop at the destination called for by his ticket, could recover upon the failure of the train to stop for breach of contract, but could not recover for the indignity of being put off after being notified by the conductor that the train would not stop there, and refusing to pay additional fare. In Bradshaw v. Railroad Co., 135 Mass. 407, the passenger had received, by the mistake of the conductor, a wrong transfer ticket, which was declined by a second conductor upon presentation. It was held that the passenger could not, after refusing to pay his fare to the second conductor, and being by him expelled from the car, maintain an action against the company for such expulsion. The court said:

"If the company had agreed to furnish him with a proper ticket, and has failed to do so, he is not at liberty to assert and maintain by force his rights under that contract, but is bound for the time being to yield to the reasonable practices and requirements of the company, and enforce his rights in the more proper way."

In Townsend v. Railroad Co., 56 N. Y. 295, the passenger's ticket had been taken up by one conductor without giving him any check or other evidence showing his right to proceed upon a subsequent train. Upon being requested to pay his fare by the conductor of the subsequent train, the passenger refused, informing the conductor of the action of the other conductor, and he was thereupon ejected from the train. The court held that the railway company was liable for the wrongful conduct of the first conductor, but not in exemplary damages for the act of the second conductor. Grover, J., after observing that the second conductor owed to the company the duty of enforcing its rules, and that the passenger could have resorted to his remedy after notice that he could not proceed upon the ticket which had been taken up, used this language:

"If, after this notice, he waits for the application of force to remove him, he does so in his own wrong. He invites the use of the force necessary to remove him, and, if no more is applied than is necessary to effect the object, he can neither recover against the conductor nor company therefor. This is the rule deducible from the analogies of the law."

These adjudications were all in cases in which the conductor, pursuant to the regulations of the railway carrier, was justified in requiring the passenger to pay, although by the mistake of the com-

pany's agent the passenger had not obtained such a ticket as he was entitled to.

Other authorities are to the effect that in cases where the carrier has failed to furnish the passenger a proper ticket, or, having furnished one, the carrier's agents have refused to honor it, the passenger's recovery is not limited to the increased expense to which he is subjected, but includes as elements his inconvenience and loss of time, and also compensation for the indignity attending the violation of his rights. 4 Elliott, R. R. § 1594. In cases where the passenger is unable to pay the fare, or for other reasons is constrained to leave the car under humiliating circumstances, it is reasonable that complete indemnity should include compensation for the indignity as well as for his pecuniary loss.

In the present case, if the plaintiff had left the car at Washington, he would not have been exposed to any indignity. He could have taken a train on the Baltimore & Ohio Railroad without serious inconvenience. After he was informed that the car would go over the Pennsylvania Railroad, he was bound to know that the defendant could not fulfill the contract which its agent had mistakenly made. Under these circumstances, it was his duty to leave the car at Washington, or elect to become a passenger of the Pennsylvania Railroad. If he had done either, he could have secured ample redress for the breach of his contract. There is nothing in the evidence to suggest that the defendant's agent, in selling him a berth upon the sleeping car, willfully or knowingly sold him one upon the wrong car. There is no reason why the plaintiff, as the victim of an innocent mistake, should be entitled to a larger recovery of damages than he would for the breach of a similar contract by an individual. The protection of the traveling public does not require an exaggerated indemnity for an unintentional breach of contract by a carrier to the party aggrieved. If the plaintiff, recognizing the situation, had adjusted his own conduct accordingly, he would have been entitled to a recovery of the actual compensation for his loss; and this would have afforded him adequate indemnity. It is said, however, that he was not informed before reaching Washington that the car would not go by the Baltimore & Ohio Railroad, or, rather, that the evidence presented a question of fact for the jury whether he had received the information. Assuming that he was not aware until after the car had left Washington that it was not to go by the Baltimore & Ohio Railroad, and that he did not discover that his contract with the defendant had been broken until the train conductor called upon him to pay fare as a passenger of the Pennsylvania Railroad, it was not necessary for him then, in order to vindicate his rights, to insist upon being ejected from the car by force. If he had left the car without force, he would have been entitled to recover, not only his additional expenses and for his inconvenience and loss of time, but also for the humiliation and indignity, if there was any, of having to do so compulsorily, such compensation as the circumstances might warrant. Instead of doing this, however, he insisted upon being ejected by force. Having obstinately invited the force that was used by the employés of the train,

he ought not, when no more was used than was necessary, to have been allowed to recover of the defendant therefor. Upon the principle by which he was allowed to recover for the force used, a party would be entitled to recover for a broken arm or leg, or other serious personal injury brought upon himself by his unnecessary resistance to the acts of the employés in enforcing the regulations of the railway company.

In my opinion, it was error on the part of the trial judge to refuse the instruction to the jury which was requested by the defendant.