CALHOUN v. PULLMAN PALACE CAR CO.

(Circuit Court, W. D. Tennessee, W. D. December 14, 1906.)

No. 3,860.

1. CARRIERS—SLEEPING CAR COMPANIES—DUTY TO THE PUBLIC.

A sleeping car company is not a common carrier of passengers, and its liability to persons seeking its accommodations rests solely on breach of its implied obligation to furnish such accommodations as it holds itself out as offering to the public.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1572.]

2. SAME—ACTION—DECLARATION.

Plaintiff alleged that, being a holder of a railroad ticket which entitled him to be carried over the P. Railroad from New York to Washington, then to Chattanooga, Tennessee, he exhibited such ticket to the agent of defendant sleeping car company at Providence, R. I., who informed him that by purchasing a local ticket from Providence to Jersey City the agent could sell him sleeping car accommodations from Providence to Washington, where the railroad authorities would countersign his ticket so as to validate it for the balance of his journey; that, relying on such information, he purchased a ticket, but was refused permission to ride by the train conductor of the P. Railroad Company after leaving Jersey City, unless he paid fare, because the ticket had not been countersigned in New York; that he paid fare to the next nearest station, where he was ejected. Held, that the declaration did not state a cause of action against the sleeping car company.

3. SAME—ACTS OF AGENTS—SCOPE OF AUTHORITY.

The agent of a sleeping car company had no authority to inform a prospective passenger that his railroad ticket entitled him to ride without having the same countersigned and validated at an intermediate point.

Carroll & McKellar, for plaintiff.
Thos. H. Jackson, for defendant.

McCALL, District Judge. This case is heard upon a demurrer to the declaration.

It is alleged as follows:

"That on the 1st day of September last the plaintiff was the holder of a ticket which entitled him to be carried over the Pennsylvania Railroad from New York to Washington City, and thence, over connecting lines, to Chattanooga, Tenn., which said ticket he exhibited to the agent of the defendant in Providence, R. I., who informed him that by purchasing a local ticket from Providence to Jersey City he could sell him and furnish him a lower berth in the Pullman car from Providence to Washington, where he could get the railroad authorities to fix his railroad ticket, so that he could go forward on his journey, returning to Chattanooga. The aforesaid agent of the defendant examined the aforesaid railroad ticket, and informed him that it was not necessary for him to go to New York for the purpose of having his ticket countersigned; that he could have that done in Washington, and thereupon, and upon the assurance given him by the agent of the defendant, the plaintiff purchased a local ticket which entitled him to enter upon the train of the connecting railroad company, and to enter a sleeping car thereto attached, and to be transported therein over the lines of the Pennsylvania Railroad from Jersey City to Washington, and having the assurance, as aforesaid, that with the aforesaid railroad ticket and the sleeping car ticket, and upon the undertaking of the defendant for the compensation it received for the said sleeping car berth, to furnish the plaintiff the accommodations of the sleeping car from Providence, R. I., to Washington City, and upon the assurance made

to him by the agent of the aforesaid defendant, and the warranty that upon his aforesaid railroad tickets and the sleeping car ticket, that he would have and enjoy the right to occupy the berth he purchased from Providence, R. I., to Washington City, he entered into the aforesaid contract with the defendant company, became a passenger upon the car, occupied the berth assigned to him, and was carried without molestation until the train reached Trenton, N. J., when he was awakened by the porter of the sleeping car and informed that the train conductor desired to see him; that the train conductor informed him that notwithstanding the representation and warranty made to him by the agent of the defendant company he would not be carried as a passenger, because his ticket had not been countersigned at New York, and that unless he paid him the local fare he would be ejected from the car; that the plaintiff thereupon paid to the conductor the local fare to Philadelphia, it being the nearest station at which the train stopped, and then, notwithstanding the assurance and warranty so made by the defendant company as aforesaid, he was ejected by the conductor from said car, and suffered the humiliation of a public ejection, was necessitated to go back to New York to have his ticket countersigned, and was delayed upon his trip, subjected to indignities and expense to his great damage $10,000, for which he sues, and demands a trial by jury."

The defendant in his demurrer thereto sets out eight separate grounds. All of them may be considered together, since, when they are boiled down, it is seen that the defense is that there is no ground of action alleged in the declaration which entitles plaintiff to recover against the defendant. There is but one count in the declaration, and a careful reading thereof discloses that it is inconsistent in its averments. The plaintiff first alleges that on the 1st day of last September he was the holder of a ticket which entitled him to transportation over the Pennsylvania Railroad from New York City to Washington City, and then, over connecting lines, to Chattanooga, Tenn. If this is true, and he was forced to leave the Pennsylvania Railway train, as is alleged, by a conductor of that company in charge of one of its trains, then his right of action, if he has any, would be against that railroad company, and not against the defendant, Pullman Car Company, against which nothing is alleged in so far as the complaint of actual ejection is concerned.

However, plaintiff avers, in connection with the above statement, that he exhibited his ticket to the agent of the defendant company in Providence, R. I., who informed him that, if plaintiff would purchase a local railroad ticket from that point to Jersey City, he, the agent of the defendant, could sell to plaintiff a sleeping car ticket from there to Washington, and that it was not necessary for him to go to New York to get his said railroad ticket countersigned, but that he could get it fixed at Washington and proceed on his journey to Chattanooga. If plaintiff's first averment is true—that is, that he had a railroad ticket over the Pennsylvania Railroad which entitled him to go over that road from New York to Washington—then it was not necessary to go to New York to have it countersigned. Clearly, if this ticket needed to be countersigned before it was good, then, until that was done, it did not entitle plaintiff to ride over the Pennsylvania Railroad from New York to Washington. And nothing that the agent of defendant said could validate the railroad ticket.

Plaintiff proceeds, and alleges that, relying on this information given him by the agent of the defendant, he purchased a local railroad ticket

to Jersey City, to connect with the Pennsylvania Railroad, over which he avers he held a ticket to Washington, and purchased a sleeping car ticket from defendant's agent to Washington, and went upon the train and into his berth, relying confidently on the assurance of this defendant that it was not necessary to go to New York to have his railroad ticket countersigned, and that the sleeping car ticket which he held would afford him the comfort of traveling in that sleeping car to Washington. After the sleeping car had been hooked onto the train of the Pennsylvania Railroad, and was near Trenton, N. J., he was informed by the conductor of the train that he could not carry him over that road on that ticket unless it had been countersigned in New York, and that plaintiff must pay his fare or get off. There is no allegation that the sleeping car on which he was to be carried from Providence to Washington, under the ticket he held for a berth therein, did not go at the time, and on the route, for which plaintiff's railroad ticket called. There is no allegation against the defendant, except that its agent informed plaintiff that it was not necessary for him to go to New York to have a railroad ticket countersigned which plaintiff held, and which he avers entitled him to transportation over the Pennsylvania Railroad.

There is no averment that the information given plaintiff by defendant's agent, and upon which he alleges he so confidently relied, was incorrect. Indeed, there is no allegation that it was at all necessary that said railroad ticket should have been countersigned at New York or elsewhere. The only allegation is that, notwithstanding the representation made to plaintiff by defendant's agent, the train conductor informed him that he could not be carried as a passenger on that train because his ticket had not been countersigned at New York.

Counsel for plaintiff insists that the facts stated in the declaration make the defendant company an insurer or warrantor of the validity of the ticket which plaintiff had over the Pennsylvania Railroad from New York to Washington. To sustain this position, counsel relies upon the case of Pullman Palace Car Company v. King, 99 Fed. 380, 39 C. C. A. 573. In that case the facts were that King held a valid coupon ticket from New Orleans to New York. The last coupon was over the Baltimore & Ohio Railroad from Washington to New York. He exhibited this ticket to defendant's agent at New Orleans, and thereby informed that agent that he, King, proposed to go over that line. The defendant's agent undertook to sell King a ticket good for a berth in the sleeping car Dioces from New Orleans to New York, to go over the railroad lines for which King's railroad ticket called. The agent made an error and sold King a ticket for a berth in a sleeping car that went from Washington to New York over the Pennsylvania Railroad, and over which railroad King's ticket was not valid, when he should have sold him a ticket, if he sold him one at all, which was good for a berth in a sleeping car that went over the lines of railroad for which King's railroad ticket called, including the Baltimore & Ohio Railway from Washington to New York. The Circuit Court of Appeals of the Second Circuit decided upon the facts in that case that the jury was justified in finding that the defendant undertook, for a compensation received, to furnish the plaintiff the accommodations of the sleeping car from New Orleans to Jersey City, and said:

"It, in effect, represented to him by its agent that the car would go by the line of the Baltimore & Ohio Railroad, because, by showing him his ticket, the plaintiff virtually informed the agent that he proposed to go by that line. The representation was in the nature of a warranty, and the contract may, there- fore, be pleaded as embodying it as a part of its terms. It is plain that this contract has been broken, if the plaintiff was, without just cause, compelled by the defendant, or those for whose acts it was responsible, to leave the car at any time before reaching Jersey City; and in that event he was entitled to recover for the breach, as he could if he had been wrongfully ejected by a com- mon carrier of passengers, or by an innkeeper."

After making this statement, Judge Wallace, speaking for the court, further said:

"The proprietor of a sleeping car is not, however, a common carrier of pas- sengers, nor an innkeeper. And the liability of the sleeping car corporation rests upon the breach of its implied obligation to furnish the accommodations which it holds itself out as offering to the public. It does not hold itself out as offering to supply the motive power for the transportation of passengers, or any of the instrumentalities or facilities for the management of the train. The passenger understands that these are to be supplied by the railroad company over which he has bought, or is to buy, his ticket, and that, unless he complies with the proper rules and regulation of the railroad company in respect to the payment of fare, he is not entitled to be carried, and may be ejected from the car"—citing Lemon v. Car Company (C. C.) 52 Fed. 262; Duval v. Car Com- pany, 62 Fed. 265, 10 C. C. A. 331, 33 L. R. A. 715.

In Ulrich v. Railroad, 108 N. Y. 80, 15 N. E. 60, 2 Am. St. Rep. 369, it was held that the purchase of a ticket for a seat in a drawing- room car has no effect upon the status of the purchaser as a passen- ger, and that "the contract for a seat did not make the purchaser a passenger in any sense; but it simply provided that, if the purchaser secured a right to ride on the train, he could also enjoy the advantages, of a specific seat during the trip if he so desired." The difficulty in which counsel for plaintiff here finds himself is that the facts alleged in the declaration do not bring this case within the decision in the King Case, supra. In that case the plaintiff was ejected from a train on a railroad over which he had no railway ticket at all, and he was placed in this embarrassing situation by reason of an error committed, by the defendant's agent, made with the plaintiff's railroad transporta- tion lying before him. In the case at bar the defendant was ejected from a train on a railroad over which he had a ticket, and he was ejected by a railway conductor because the conductor claimed the ticket should have been countersigned in New York. In other words, in this case, had the plaintiff complied with the proper rules and regulations of the railroad company in respect to having his ticket countersigned in New York (if we assume that that was necessary, it not being al- leged), then he would have not been ejected from the car, but would have enjoyed the luxury of traveling undisturbed in a Pullman Palace Car from Providence to Washington, according to his Pullman car ticket. The infirmity was in the railroad ticket, and not in anything that the defendant did or left undone.

To hold, upon the facts stated in the declaration in this case, that the defendant, Pullman Car Company, is liable in damages to plaintiff is equivalent to saying that the Pullman Company is the insurer of the genuineness and validity, and the identity of the holder, of every rail- way ticket which is exhibited to its agents when applied to for a sleep-

ing car ticket, although the sleeping car ticket calls for a berth in a Pullman car that is carried over the line, or lines, of railway for which such railway ticket calls. That is to say, that if a party holds a railway ticket that must be countersigned to validate it, or if he holds a railroad ticket to which he is not entitled, and could not use for transportation if his identity became known to the railroad conductor, or for any reason the railroad ticket is invalid, all such party need to do in order to hold a sleeping car company for damages would be to go to the office of such sleeping car company, exhibit such railroad ticket to the agent, buy a sleeping car ticket over the lines called for by the railroad ticket, go aboard the train and into his berth, and then because of an infirmity in the railroad ticket, which the conductor discovers, get ejected from the car or train, and then sue the sleeping car company. Such a proposition, to my mind, is sanctioned neither by any rule of right reason or law. As above stated, the courts have held that the Pullman Palace Car Company is neither a common carrier of passengers nor an innkeeper, and, to this I add, neither is it an information bureau nor a guaranty company, but its liability rests upon the breach of its implied obligation to furnish the accommodations which it holds itself out as offering to the public. It does not hold itself out as an information bureau, nor as the insurer of the validity of railroad tickets.

Admitting that the information alleged to have been given by defendant's agent was incorrect, it could not render defendant liable for the reason that the agent was acting clearly outside the scope of his duty as such agent. And, further, the plaintiff, so far as this declaration discloses, had equal or better opportunity to know about the condition of the ticket which he held than was afforded the agent of defendant, and so far as this defendant is concerned, it appears to me that the plaintiff's trouble was brought about by his own negligence and carelessness.

The result is the demurrer is sustained, and the declaration will be dismissed.