## CALHOUN v. PULLMAN CO.

(Circuit Court of Appeals, Sixth Circuit. February 15, 1908.)

### No. 1,664.

1. PLEADING—DEMURRER—ADMISSION OF FACTS.

A demurrer to a petition admits all the facts well pleaded.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, §§ 525–534.]

2. CARRIERS—CARRIAGE OF PASSENGERS—SLEEPING CARS.

All the duties to a passenger incident to a carrier's contract of transportation continue to rest on the railroad company, notwithstanding the passenger, by virtue of another contract with the sleeping car company, is entitled to special accommodations in the sleeping car; the sleeping car company having no control over the contract for transportation, and not being responsible for the manner in which it is performed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1578. 1582, 1589.]

3. SAME—ACTS OF AGENT—SCOPE OF AUTHORITY.

Where a passenger's railroad ticket reading from New York to Washington, and thence to Chattanooga, provided that the ticket should be countersigned at New York, the passenger was bound to know that a sleeping car company could not guarantee the manner in which the railroad company should perform its contract, and that the sleeping car company's agent had no authority to agree that the passenger's ticket would be acceptable for transportation to Washington without being countersigned in New York, and might be countersigned in Washington.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

This cause was disposed of in the court below upon a demurrer to the plaintiff's petition. The demurrer was sustained, and the judgment was for the defendant. The opinion of the court by Judge McCall is reported in (C. C.) 149 Fed. 546. The action was for a breach of contract for the use of a sleeping birth in one of the cars of the defendant from Providence, R. I., to Washington, D. C., and an alleged supplementary agreement that he could have a certain railroad ticket, which he had for transportation from New York to Washington, countersigned in Washington, whereas the railroad company required it to be countersigned in New York, in consequence of which he was refused further transportation by the railroad company at Trenton, N. J., and obliged to return to New York.

The petition alleged: "That on the 1st day of September last the plaintiff was the holder of a ticket which entitled him to be carried over the Pennsylvania R. R. from New York City to Washington City, and thence over connecting lines to Chattanooga, Tenn., which said ticket be exhibited to the agent of the defendant in Providence, R. I., who informed him that by purchasing a local ticket from Providence to Jersey City he could sell him and furnish him a lower berth in the Pullman car from Providence to Washington, where he could get the railroad authorities to fix his railroad ticket so that he could go forward on his journey, returning to Chattanooga. The aforesaid agent of the defendant examined the aforesaid railroad ticket, and informed him that it was not necessary for him to go to New York for the purpose of having his ticket countersigned. That he could have that done in Washington, and thereupon, and upon the assurance given by the agent of the defendant, the plaintiff purchased a local ticket which entitled him to enter upon the train of the connecting railroad company, and to enter a sleeping car thereto attached and to be transported therein over the lines of that carrier to Jersey City and over the lines of the Pennsylvania R. R. from Jersey City to Washington, and having the assurance as aforesaid, that with the aforesaid railroad ticket and the sleeping car ticket, and upon the undertak-

ing of the defendant, for the compensation it received for the said sleeping car berth, to furnish the plaintiff the accommodations of the sleeping car from Providence, R. I., to Washington City, and upon the assurance made to him by the agent of the aforesaid defendant, and the warranty that, upon his aforesaid railroad tickets and the sleeping car ticket, he would have and enjoy the right to occupy the berth he purchased from Providence, R. I., to Washington City, he entered into the aforesaid contract with the defendant company, became a passenger upon the car, occupied the berth assigned to him, and was carried without molestation until the train reached Trenton, N. J., when he was awakened by the porter of the sleeping car and informed that the train conductor desired to see him. That the train conductor informed him that, notwithstanding the representation and warranty made to him by the agent of the defendant company, he would not be carried as a passenger, because his ticket had not been countersigned at New York, and that, unless he paid him the local fare, he would be ejected from the car. That the plaintiff thereupon paid to the conductor the local fare to Philadelphia, it being the nearest station at which the train stopped, and then, notwithstanding the assurance and warranty so made by the defendant company as aforesaid, he was ejected by the conductor from the said car, and suffered the humiliation of a public ejection, was necessitated to go back to New York to have his ticket countersigned, was delayed upon his trip, subjected to indignities and expense, to his great damage $10,000, for which he sues and demands a trial by jury."

The demurrer assigned, beside other causes, the following: (1) "Defendant says that as a matter of law the declaration sets forth no cause of action against it, for the reason that there is no allegation that the defendant, or its agents, breached any contract entered into between it and the plaintiff." (2) "The declaration fails to aver that the Pullman Company failed to furnish the sleeping car accommodations contracted for." (3) "The declaration fails to aver that the sleeper upon which plaintiff was being carried was not taken through over the lines of the railroads according to the route indicated by the railroad transportation which the plaintiff alleges he exhibited to the agent of the defendant." (4) "The declaration does not allege that he was put off the car by the Pullman Company or its agents. On the contrary, it alleges that he was put off by the agents of the railroad company, for a defect in his railroad transportation." (5) "The declaration alleges that the plaintiff being a holder of a railroad ticket which entitled him to be carried over the Pennsylvania R. R. from New York City to Washington City, and thence over connecting lines to Chattanooga, Tennessee, and which was required to be countersigned at New York, which ticket he exhibited to the agent of the Pullman Company in order to procure a sleeping car berth; that the agent of the Pullman Company informed him that the railroad ticket could be countersigned at Washington as well as at New York; but said declaration fails to allege any authority upon the part of the agent of the Pullman Company to pass on the regularity of the railroad ticket held by the plaintiff. It fails to allege that it was the duty of the Pullman Company, or its agent, to countersign the railroad ticket, or to pass on its validity."

Carroll & McKellar, for plaintiff in error.

Thomas H. Jackson, for defendant in error.

Before SEVERENS and RICHARDS, Circuit Judges, and KNAPPEN, District Judge.

SEVERENS, Circuit Judge (after stating the facts as above).

The demurrer admits all facts well pleaded in the petition, and the question is whether the information given to the plaintiff by the defendant's agent of whom he purchased his sleeping berth ticket, that he could get his transportation ticket countersigned at Washington instead of New York, bound the defendant as by a guaranty that the railroad company should transport him to Washington without his

ticket being countersigned at New York. The solution of this question depends upon the relation of the sleeping car company and the railroad company, and their respective relations to the passenger. These relations are well known to the public, and recognized by the courts.

The railroad company is the carrier and is the party with whom the passenger contracts for his transportation. Among other things it contracts to supply him with the usual conveniences for his comfort while being transported. The parlor or sleeping car company's business is to provide the passenger with certain conveniences and comforts which are in addition to those contracted for by the railroad company. Those duties to the passenger which are incident to the carrier's contract for transportation continue to rest upon the railroad company, notwithstanding he may have another contract with the sleeping car company for special accommodations. The use of the car for carrying the passenger is a matter for arrangement between the companies. The railroad company retains the power of control and management of its trains including the sleeping cars as to all matters except those which are peculiarly incident to the other company's special contract with the passenger. The duties of the sleeping car company to the passenger are coextensive with the nature of its contract. It does not undertake those which belong to the railroad company. The compass of the duties which belong to each company is defined by this demarcation. It follows that the obligation of the sleeping car company must be dependent upon the contract which the passenger is expected to have with the railroad company. And, since it has no control over that or its execution, it is not responsible for the manner in which it is carried out. These propositions express, as we think, the doctrine generally held upon this subject, and seem to be the logical relation of the law and facts. Duval v. Pullman's Palace Car Co., 62 Fed. 265, 10 C. C. A. 331, 33 L. R. A. 715; 23 U. S. App. 527; Paddock v. Atchison, T. & S. F. R. Co. (C. C.) 37 Fed. 841, 4 L. R. A. 231; Campbell v. Pullman Car Co. (C. C.) 42 Fed. 484; Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141; The Express Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791; Chicago, etc., Railroad Co. v. Pullman Car Co., 139 U. S. 79, 11 Sup. Ct. 490, 35 L. Ed. 97. We have not been able to find that the Supreme Court has ever passed directly upon such a question as we have before us. But the reasoning in the discussions in the three cases last cited throws some light upon the relations between railroad companies and other companies which it permits to enjoy the privilege of furnishing additional conveniences to the public by the use of its own facilities. The deduction seems clear that in doing this the railroad company relinquishes none of its own powers and rights, and is not absolved from its own obligations to the public as a common carrier.

The plaintiff relies much upon the case of Pullman's Palace Car Co. v. King, 99 Fed. 380, 39 C. C. A. 573. But the facts of that case are distinguishable. The passenger exhibited to the defendant's agent a transportation ticket from New Orleans to New York, the last coupon of which was for passage from Washington to New York by the Baltimore & Ohio Railroad, and asked for a sleeping car ticket to cor-

respond. The agent sold him one in a sleeping car which did not run from Washington to New York by the Baltimore & Ohio, but by the Pennsylvania Railroad, from which he was ejected after leaving Washington for refusal to pay his railroad fare. The court held that the defendant guaranteed that the car in which was the berth sold was one which would go by the Baltimore & Ohio Railroad, and that it was liable for this breach of contract.

It was therefore beyond the sphere of the Pullman Company's business to negotiate with the plaintiff in regard to the manner in which his contract with the railroad company should be performed, and its agent at Providence had no authority to make any stipulation for it in that regard. The plaintiff was bound to know what the usual course of business is in such matters, and that the sleeping car company would not guarantee the manner in which the railroad company should perform its contract with him, and that the information which he says the agent gave him, that it was not necessary for him to get his transportation ticket countersigned at New York, and that he could have it done at Washington, could amount to no more than the agent's personal opinion upon the subject.

We have this far considered the case as if it were alleged that the defendant's agent had undertaken to make a guaranty in behalf of the defendant with the plaintiff in regard to the rights of the plaintiff under his contract for transportation. But it is doubtful whether the petition in the face of the demurrer can be held to amount to an allegation that there was any such guaranty. It is therein alleged that "the aforesaid agent of the defendant examined the aforesaid railroad ticket, and informed him that it was not necessary for him to go to New York for the purpose of having his ticket countersigned." It is then stated that "upon the assurance given by the agent" he purchased the sleeping car ticket; and again that upon the assurance "and the warranty that upon his aforesaid railroad tickets and the sleeping car ticket he would have the right" to occupy the berth, etc., he became a passenger upon the car. It is evident in using the words "assured" and "guaranty" nothing else is referred to than the previously mentioned information by the agent, for there is nothing else stated to have been assured or warranted. However, we will put our decision upon the broader ground that the plaintiff was not entitled to treat the representation of the agent as a contract of the defendant company. The opinion of the court below was in harmony with the view we have expressed. We think the court was right in sustaining the demurrer.

The judgment must be affirmed, with costs.