11759

CALDWELL *ET AL. v. PULLMAN CO.*

(128 S. E., 504)

1. CARRIERS—PULLMAN COMPANY IS CHARGEABLE WITH THE SAME HIGH DEGREE OF ACCOUNTABILITY FOR WRONGFUL AND TORTIOUS ACTS OF ITS SERVANTS AS IS A COMMON CARRIER.—Pullman Company is chargeable with the same high degree of accountability for wrongful and tortious acts of its servants as is a common carrier.

2. CARRIERS—EVIDENCE HELD TO WARRANT INFERENCE OF NEGLIGENCE ON PART OF PULLMAN COMPANY.—Evidence, in action for injuries sustained by sleeping car passenger when she stumbled over suit case in aisle, *held* sufficient to warrant inference of negligence on part of defendant, Pullman Company.

3. CARRIERS—PULLMAN COMPANY IS CHARGEABLE WITH HIGHEST DEGREE OF REASONABLE CARE CONSISTENT WITH PRACTICAL OPERATION OF ITS CARS FOR PURPOSES INTENDED.—Pullman Company is chargeable with highest degree of reasonable care consistent with practical operation of its cars for purposes intended.

4. DAMAGES—$1,800 DAMAGES FOR BROKEN TOE AND PROLONGED SUFFERING HELD NOT EXCESSIVE.—$1,800 damages for broken toe and prolonged suffering, sustained by Pullman car passenger from stumbling over suit case in aisle, *held*, not excessive.

Before WHALEY, J., County Court, Richland, April, 1924. Affirmed.

Action by Serena R. Caldwell and husband against the Pullman Company. Judgment for plaintiffs and defendant appeals.

The evidence in the case tended fairly to establish that plaintiff was passenger in defendant's sleeping car, traveling from Columbia, S. C., to New York; that on morning of Saturday, August 12, 1923, when car was but dimly lighted, she arose early, and on way to dressing room stumbled over a suit case partially projecting in the aisle. At Washington, which was reached about two hours after the injury, plaintiff's foot was examined by defendant's physician, who painted it with iodine, but failed to discover that any bones were broken, and advised plaintiff to continue her journey.

On the following Friday, due to condition of her foot, plaintiff returned from New York, where she had intended to stay for several weeks, and a week later, just two weeks after the injury, went to a local physician who, by X-ray examination, ascertained that bone of toe next to little toe had been broken. By this time the toe had become infected so that skin had to be broken to permit pus to drain. Plaintiff was in bed for three weeks, and spent the remainder of the summer on crutches. Recovery was had in the sum of $1,800.

The Court instructed the jury in part as follows:

"Now the Pullman Company doesn't insure anybody against such occurrences. On the other hand, it owes a

little more care than just ordinary care. I wouldn't charge you that it owed absolute care, and I wouldn't charge you that it owed the highest possible care; I would charge you it owed the highest degree of reasonable care consistent with the practical operation of that car for the purpose it was intended, in relation to the duties it not only owed to the plaintiff, but to others."

*Messrs. Douglas McKay* and *J. J. Murray,* for appellant, cite: *Comfort of passengers proper consideration:* 92 Fed., 824; 186 N. W., 234; 93 Mo. App., 267; 178 N. W., 887; 225 P., 41. *Usual custom:* 61 S. C., 468; 39 S. E., 715; 67 S. C., 181; 45 S. E., 188. *Liability for injuries from baggage:* 4 R. C. L., 1188; 84 Atl., 774; 82 Atl., 246; 44 N. W., 748; 71 Sou., 620; 43 L. R. A. (N. S.), 1050; 152 N. W., 821; 105 N. E., 379. *Liability for injuries from equipment in aisles:* 269 Fed., 231; 3 A. L. R. (N. S.), 638. *Carrier not presumed negligent on proof of passenger injured:* 83 S. C., 53; 64 S. E., 1012; 88 S. C., 91; 70 S. E., 414; 92 S. C., 151; 121 S. E., 198. *Extent of obstruction:* 116 N. E., 761; 154 S. W., 16. *Evidence of negligence ambiguous:* 71 Sou., 620; 44 N. W., 748. *Circumstances supporting circumstantial evidence must be proved:* 92 U. S., 281; 23 L. Ed., 707; 100 U. S., 693; 25 L. Ed., 761; 181 Fed., 304; 52 Atl., 864; 54 Am. S. R., 484; 45 N. W., 565. *Duration of obstruction pure conjecture:* 71 Sou., 620; 44 N. W., 748; 161 Wis., 277; 152 N. W., 821; 105 N. E., 379. *Duties of common carrier and sleeping car company distinguished:* 83 S. C., 448; 65 S. E., 628. *Duties of sleeping car company:* 42 Fed., 484; 5 A. S. R., 31; 25 R. C. L., 41; 2 Hutchinson on Carriers (3rd Ed.) Sec. 1130; 269 Fed., 231; 12 A. L. R., 1364; 94 S. W., 671; 149 Fed., 546; 159 Fed., 387; 211 Fed., 391; 257 S. W., 686; 92 Fed., 824; 74 Fed., 499; 105 S. C., 287; 89 S. E., 655. *Duty of carrier in regard to baggage:* 13 N. E., 455; 82 Atl., 246; 84 Atl., 774; 154 S. W., 16; 231 S. W., 954; 240 S. W., 512; 32 L. R.

A. (N. S.), 1050; 44 N. W., 748; 73 So., 479. *Moore on Carriers* (1st Ed.), 692. *Cases distinguished:* 73 So., 497; 116 N. E., 761; 153 S. W., 742; 182 S. W., 1049; 102 S. W., 626; 186 N. W., 233; 82 Atl., 246; 238 Fed., 919; 169 N. W., 715; 61 N. Y. S., 1113.

*Messrs. Fowles & Bailey* and *John F. Quinn,* for respondent, cite: *Degree of care owed by sleeping car company:* Hutchinson on Carriers. 1145; 89 S. C., 287; 71 S. E., 841; 1913-A, Ann. Cas., 894; 84 S. C., 67; 65 S. E., 937; 110 S. C., 560; 90 S. E., 909; 90 S. C., 25; 72 S. E., 558; 10 C. J., 855. *Circumstances inferred:* 115 S. C., 306; 101 S. E., 641. *Duty of carrier in regard to baggage:* 140 Ga., 254; 78 S. E., 925; 1914-D, Ann. Cas., 165 and note; 61 N. Y. S., 1113. *Excessive verdicts:* 115 S. E., 768.

May 6, 1925.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

"This case was duly commenced on December 14, 1923, and came on for trial on April 21, 1924, in the County Court for Richland County before his Honor, Judge Marcellus S. Whaley, and a jury, and resulted in a verdict for the plaintiffs for $1,800 actual damages. Motions for nonsuit and for direction of verdict and for new trial, as hereinafter noted, were duly made by attorneys for appellant and overruled by the trial Court. Judgment on the verdict rendered was entered, and notice of intention to appeal to this Court therefrom was duly served upon the respondents."

The exceptions, five in number, raise three questions:

(1) Is there any evidence of negligence?

1, 2 In Hutchinson on Carriers, par. 1145, it is said:

"There seems to be no reason why the sleeping car company should not be held to the same high degree of accountability for the wrongful and tortious acts of its

servants as is exercised of common carriers, and especially of passengers by rail."

It is seen by this that there is no difference in that of appellant and that of a railroad for a smilar occurrence. The same acts of negligence will hold either liable.

In the case of *Calder v. Southern Ry.,* 89 S. C., 287; 71 S. E., 841, Ann. Cas., 1913A, 894, this Court said:

"A corporation engaged in running sleeping coaches, with sections separated from the aisle only by curtains, is bound to have an employee, charged with the duty of carefully and continually watching the interior of the car, while berths are occupied by sleepers."

The proof shows that either the conductor or the porter could have seen the valise. The conductor was asleep, and the porter did not see it. It was placed in the car at Richmond by the porter, and the owner went to sleep. The jury could infer from the evidence that it was placed improperly. There is no direct evidence, but from facts and circumstances proven an inference can be drawn. As was said in *Faulk v. Seaboard Air Line Railroad,* 115 S. C., 306; 101 S. E., 641:

"There is no direct and positive testimony that the horses were injured while being transported by the defendant, but it is susceptible of a reasonable inference to that effect."

Also in *Seaboard Air Line Ry. v. Andrews,* 140 Ga., 254; 78 S. E., 925, Ann. Cas., 1914D, 165. There the Court said:

"It could not be said, as a matter of law, that a very thoughtful and prudent person, engaged as a common carrier, knowing the custom of obstructing the aisle * * * with valises and other hand baggage and the danger incident thereto, would have directed his passenger to enter the car at a time when there were no artificial lights and it was too dark within for a passenger to readily detect obstructions before coming in contact with them. If it were dark in the car * * * the company should see to it that the way

was clear  *  *  *  or to provide some means to prevent his injury by failing over baggage."

In *Levine v. Webb,* 30 Misc. Rep., 196; 61 N. Y. S., 1113, it is said:

"Allowing a valise to stand in the aisle of a dimly lighted car, where passengers are apt to stumble over it, is negligence."

Under the facts outlined by the evidence, there were sufficient facts to carry the case to the jury as to the negligence of the appellant.

(2) Did the Judge err when in his charge he held the appellant to "the highest degree of reasonable care"? Taking his charge as a whole it was free from error under *Bolton v. Western Union,* 84 S. C., 67; 65 S. E., 937. *Lundy v. Telegraph Co.,* 90 S. C., 25; 72 S. E., 558, and *Eargle v. Sumter Lighting Co.,* 110 S. C., 560; 96 S. E., 909.

The verdict was not excessive, as was found by Judge Whaley.

All exceptions are overruled, and judgment affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES FRASER and MARION and MR. ACTING ASSOCIATE JUSTICE J. W. JOHNSON consurs.

MR. JUSTICE COTHRAN did not participate.