### 12103

### FORBES v. PULLMAN COMPANY *ET AL.*

#### (135 S. E., 563)

1. CARRIERS—REFUSAL OF DIRECTED VERDICT ON GROUND THAT BAG-GAGE OBSTRUCTING AISLE WAS NOT SHOWN TO HAVE BEEN THERE ANY APPRECIABLE TIME OR TO HAVE BEEN SEEN BY DEFENDANTS' EMPLOYEES HELD NOT ERROR.—In action against railroad and Pullman Company for injuries sustained when plaintiff stumbled over suit case in dimly lighted Pullman car, refusal of directed verdict for defendants on ground that plaintiff had not shown that baggage had obstructed aisle for any appreciable time or had been seen by defendant's employees *held* not error, in view of evidence of other alleged neglignce.

2. TRIAL—CHARGE AS TO WILLFULNESS AND WANTONNESS IF UNWARRANTED BE EVIDENCE IN ACTION FOR PERSONAL INJURIES HELD HARMLESS ERROR IN VIEW OF ENTIRE CHARGE.—In action against railroad

and Pullman Company for personal injuries, error, if any, in charge, not warranted by the evidence, that negligence of plaintiff was no defense to willfulness or wantonness *held* harmless in view of whole charge.

3. CARRIERS—CHARGE THAT RAILROAD AND PULLMAN COMPANIES OWED ONLY ORDINARY CARE TO REMOVE BAGGAGE OF FELLOW PASSENGER FROM AISLE HELD PROPERLY REFUSED.—In action against railroad and Pullman Companies for injuries sustained when plaintiff stumbled over baggage in aisle of Pullman car, charge that defendants' owed only ordinary care to remove such obstructions *held* properly refused.

4. CARRIERS—PULLMAN COMPANY HELD A PUBLIC CARRIER OWING PLAINTIFF WHO STUMBLED OVER BAGGAGE IN AISLE HIGHEST DEGREE OF CARE.—Pullman Company sued for personal injuries to plaintiff who stumbled over baggage in aisle of Pullman car *held* a public carrier, chargeable with highest degree of acre.

Before WILSON, J., Sumter, July, 1925.  Affirmed.

Action by Lena D. Forbes against The Pullman Company and another.  Judgment for plaintiff and defendants appeal.

*Messrs. W. M. Reynolds* and *Douglas McKay,* for appellants, cite: *Passenger assumes risks usual to operation of train:* 55 S. C., 389; 33 S. E., 509. *Same; in case of sleeping car:* 186 N. W., 234; 93 Mo. Ap., 267; 178 N. W., 887; 225 P., 41. *Where usual custom is negligent:* 67 S. C., 181; 45 S. E., 183; 61 S. C., 468; 39 S. E., 715. *No negligence can be presumed where nothing done out of usual course unless usual course improper:* 178 N. W., 887; 93 Mo. App., 267. *Degree of care required of corrier to prevent injury to passenger resulting from instrumentality under control of fellow passenger:* 92 S. C., 564; 75 S. E., 950; 77 S. C., 434; 58 S. E., 149; 60 N. E., 486; 43 L. R. A. (N. S.), 1050; 12 A. L. R., 1364; 159 F., 387; 149 F., 546; 211 F., 391; 74 F., 499; 73 So., 479; 71 So., 620; 44 N. W., 748; 257 S. W., 686; 240 S. W., 512; 231 S. W., 954; 154 S. W., 16; 94 S. W., 671; 84 A., 774; 82 A., 246; 73 So., 479; 25 R. C. L., 41; 4 R. C. L., 1188; 2 Hutchinson on Carriers, 3rd. Ed., Sec. 1130; Moore on Carriers, 1st Ed., 692. *Plaintiff had notice of darkness of*

*car:* 72 S. C., 336; 51 S. E., 860. *Plaintiff's counsel had authority to waive issue of defendant's willfulness:* 98 S. E., 848. *Carrier not presumed negligent from bare fact that passenger was injured on train:* 92 S. C., 151; 121 S. E., 198; 88 S. C., 91; 70 S. E., 414; 83 S. C., 53; 64 S. E., 1012. *Cases distinguished:* 128 S. E., 504; 78 S. E., 925; 30 Misc. Rep. (N. Y.), 196; 61 N. Y. S., 1113. *Sleeping car company not held to exercise highest degree of care toward passengers:* 2 F. (2nd), 540; 269 F., 231; 12 A. L. R., 1364; 211 F., 391; 203 F., 1017; 159 F., 387; 149 F., 546; 74 F., 499; 32 F., 484; 5 A. S. R., 31; 257 S. W., 686; 43 S. W., 22; 94 S. W., 671; 32 S. E., 923; 25 R. C. L., 41; 2 Hutchinson on Carriers, Sec. 1130.

*Messrs. Epps & Levy,* for respondent, cite: *Duty of carrier to allow passenger sufficient time to board train:* 86 S. C., 528. *Duty of carrier to see that dark aisle is clear:* 132 S. C., 321; 140 Ga., 254. *Allowing baggage to stand in aisle of dimly lighted car negligence:* 61 N. Y. S., 1113. *Degree of care required of carrier to prevent injury to passenger resulting from instrumentality under control of fellow passenger:* 132 S. C., 321; 92 S. C., 564; 84 S. C., 15; 74 S. C., 340; 89 S. C., 287. *Sleeping car company held to highest degree of care for protection of passengers:* 132 S. C., 321; 91 S. C., 139; 82 S. C., 345.

November 16, 1926.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages brought by the plaintiff for injuries alleged to have been received by her through the negligent and willful acts of the defendants. She alleged that on or about August 17, 1923, she purchased a passenger ticket from the defendant, the Southern Railway Company, and that about 6:30 o'clock on the morning of that day she boarded the train of the defendant at Greensboro, N. C.; that this train carried a car of the Pullman Com-

pany, to which car the plaintiff was admitted, and entered same and became a passenger of the defendants thereon, intending to pay the extra or Pullman fare, as was customary, when the conductor should come for same. The fifth, sixth, and seventh paragraphs of the complaint are as follows:

"V. That at said time most of the berths in the car were down, the lights from the windows were obscured by curtains and other obstructions, and the defendants had only one small light in the extreme end of the car, all of which caused the aisle to be in almost complete darkness, and so that the plaintiff could not see any obstructions that might be in the aisle.

"VI. That before plaintiff reached her seat the train was put in motion, and while walking down the aisle to her seat the plaintiff stumbled over a suitcase that the defendants had allowed to be placed in said aisle and left there, and which the plaintiff could not see, and about which the defendants gave her no warning.

"VII. The plaintiff is an aged lady, being 68 years of age and, in falling she struck her hip violently against a seat in said car, and fell heavily to the floor, very severely bruising her hip, breaking and spraining the ligaments in her foot, and painfully bruising and jarring her entire body."

Then follow allegations that by reason of the injuries received she was put to great expense in the way of doctor's bills, medicines, and board; that she was confined to her bed for two weeks, and was under the care of physicians for six weeks; that she suffered great pain and nervousness on account of said injuries; and that the acts and omissions on the part of the defendants, which were the proximate cause of her injuries, were negligent, wanton, and willful, and that both defendants, jointly and concurrently, contributed thereto.

The defendant Southern Railway Company by its answer, pleaded contributory negligence on the part of the plaintiff, and further alleged that any delict, if there was

any, was the delict of the Pullman Company, and not due to any failure on its part to exercise the highest degree of care in relation to the plaintiff as its passenger

The defendant the Pullman Company admitted by its answer the allegations of paragraph 5 of the complaint so far as they relate, at the time in question, to the berths in the car being down and the lights from the windows obscured by curtains and other obstructions, but alleged that, although the car was dimly lighted, such a condition was usual in all Pullman cars at that hour in the morning. It admitted, on information and belief, that the plaintiff stumbled over a suit case or satchel while walking down the aisle, and that the defendant gave no warning as it was ignorant of the presence of the suit case in the aisle, and that the plaintiff received some injuries to her foot. It denied all allegations of the complaint not specifically admitted or explained, and interposed the defense of contributory negligence on the part of the plaintiff.

The case was tried before his Honor, Judge Wilson, and a jury on July 24, 1925. At the close of all the testimony, a motion was made for a directed verdict as to both defendants, which motion was overruled by the Court. The jury found a verdict for the plaintiff in the sum of $1,625. A motion for a new trial was refused.

From the judgment entered up, the defendants appeal to this Court. The first three exceptions are made by both defendants, jointly, and the fourth by the Pullman Company alone.

The appellants' specification of error set out in their first exception is based upon the refusal of the Circuit Judge to direct a verdict for the defendants. This exception is as follows:

"The trial Court erred in refusing motion of defendants for a direction of verdict, since there was not sufficient evidence of actionable negligence to warrant submission of the case to the jury, there being nothing to show that the obstructing baggage had been misplaced by its owner, a

fellow passenger of the plaintiff, for any appreciable length of time, or that it was seen by any of defendants' employees before the injury."

This exception is predicated upon the assumption that the question of the defendants' liability should be determined entirely by the length of time the suit case remained in the aisle, or whether it was seen there by any of the defendants' employees before the injury. We do not agree with this assumption.

In addition to the alleged act of negligence on the part of the defendants in allowing a suit case to be placed in the aisle and left there, the plaintiff also alleged that at the time she entered the car "most of the berths in the car were down, the lights from the windows were obscured by curtains and other obstructions, and the defendants had only one small light in the extreme end of the car, all of which caused the aisle to be in almost complete darkness, and so that the plaintiff could not see any obstructions that might be in the aisle," and that the defendants gave her no warning of such obstructions. She also charged as an act of negligence that while she was walking down the aisle and before she reached her seat the train was started. There was testimony tending to establish these allegations.

The plaintiff in the early morning purchased a ticket and qualified as a passenger on the defendants' train, entering the Pullman coach. She found the coach so dark, according to her testimony, that it was impossible for her to see the suit case left in the aisle by one of her fellow passengers. The employees of the company knew, when they invited her to enter the coach as a passenger, that the coach was dark, and they knew also that the aisle of a Pullman coach is frequently obstructed by luggage placed therein by passengers. No employee of the company accompanied the plaintiff to clear the aisle for her, and she testified that the aisle was not lighted so that she could see the obstruction for herself. While she was walking down the aisle trying to locate her seat without the assistance of any em-

ployee of the company, the train was put in motion, and she fell over the suit case in the aisle and sustained injuries.

In 25 A. & E. Ency. of Law, at page 1114, it is said:

"It is the [sleeping car] company's duty to keep the aisle of the car free from obstruction and open to the use of the passengers, and the passengers may assume that they can safely pass through the car."

exercise as high a degree of care, under similar occurrence

In *Seaboard Air Line Railway v. Andrews,* 140 Ga., 254; 78 S. E., 925; Ann. Cas., 1914-D, 165, quoted with approval in 'Caldwell v. Pullman Co., 132 S. C., 321; 128 S. E., 504, it is said:

"It could not be said, as a matter of law, that a very thoughtful and prudent person, engaged as a common carrier, knowing the custom of obstructing the aisle * * * with valises and other hand baggage and the danger incident thereto, would have directed his passenger to enter the car at a time when there were no artificial lights and it was too dark within for a passenger to readily detect obstructions before coming in contact with them. If it were dark in the car, * * * the company should see to it that the way was clear * * * or to provide some means to prevent his injury by falling over baggage."

In *Levien v. Webb,* 30 Misc. Rep., 196; 61 N. Y. S., 1113, also quoted with approval in the *Caldwell case, supra,* we find:

"Allowing a valise to stand in the aisle of a dimly lighted car, where passengers are apt to stumble over it, is negligence."

We think that, under the facts and the testimony adduced in the present case, and the law applicable thereto, the question of the defendants' negligence was properly submitted to the jury. This exception cannot be sustained.

The second exception is as follows:

2    "His Honor erred in charging the jury that they might consider the effects of wantonness and willfulness of the defendants, when there was not only no evi-

29—S. C. 137

dence of willfulness or wantonness, but also after plaintiff's counsel had specifically agreed that there was no such evidence, before the case was argued to the jury."

At the close of the testimony, when the appellants' motion for a directed verdict was being argued, counsel for the plaintiff stated to the Court that, as there was no evidence of willfulness or wantonness, he did not ask for punitive damages. The Court then overruled the appellants' motion for a directed verdict as to actual damages, and the case was submitted to the jury on that question.

It is true that the trial Judge in his charge defined the terms "willfulness" and "wantonness"; and in charging on contributory negligence, he told the jury that "ordinary negligence on the part of the plaintiff is no defense to willfulness and wantonness on the part of the defendants." Afterwards, however, when the matter was called to his attention by counsel, he made it plain to the jury that the claim of the plaintiff to punitive damages had been withdrawn.

While contributory negligence is ordinarily a question for the jury, examination of the record in this case does not disclose any testimony tending to show any contributory negligence on the part of the plaintiff. We are therefore led to conclude that, if there was error in that part of the Judge's charge complained of, such error, when the charge is considered as a whole, was harmless.

We have examined the case of *Hunter v. A. C. L. R. R.,* 72 S. C., 336; 51 S. E., 860; 110 Am. St. Rep., 605, cited by the appellants, but that case is not authority for their position, as the facts of that case were entirely different from the facts of the case at bar.

By their third exception the appellants impute error to the Circuit Judge in refusing to charge their third request, as follows:

"I charge you that the defendants owe the plaintiff in a case where an injury is claimed because of one passenger

stumbling over the baggage placed by another, only ordi-
nary care to remove such obstructions."

In *Norris v. Southern Railway,* 84 S. C., 15; 65 S. E.,
956, this Court said:

"The rule that it is the duty of a carrier to use the high-
est degree of care to protect a passenger from the wrong
or injury of a fellow passenger applies only when the car-
rier has knowledge of the existence of the danger or of
facts and circumstances from which the danger may be
reasonably anticipated. *Franklin v. R. Co.,* 74 S. C., 340;
54 S. E., 578. *Anderson v. R. Co.,* 77 S. C., 436; 58 S. E.;
149; 122 Am. St. Rep., 591."

The Circuit Judge would have committed error by charg-
ing as requested. As already pointed out, the testimony
tends to show, among other things, that the aisle of the
coach in which the passenger was invited to ride was dark
and that this fact was known to the appellants; that the
appellants also knew that passengers frequently placed their
luggage in the aisle, thus creating a source of danger to
any one using a dimly lighted or dark aisle, and not aware
of the obstruction placed therein. We think that the facts
alleged, if shown to be true, were sufficient to impute to
the appellants knowledge of the existence of the plaintiff's
danger or of facts and circumstances from which the
danger might have been reasonably anticipated, and con-
stituted just such a situation as would require the highest
degree of care on their part. This exception is overruled.

By its fourth exception, the appellant the Pullman
Company complains that the Circuit Judge com-
mitted error in charging the jury that the Pullman
Company was held to the highest degree of care. This
exception is as follows:

"The Pullman Company especially excepts to the follow-
ing charge of the trial Judge: 'Now, gentlemen, when a
passenger goes to a railroad depot or railroad agent and
gets a ticket, pays for his ticket, boards a train, whether it
is the ordinary coach or the Pullman coach, no matter

which it is, the law says that both are public carriers, and that the highest degree of care is due by the railroad company—when I say railroad company, I mean Pullman Company too—the highest degree of care is due by each to the passenger; not simply ordinary care, but the highest degree of care is due a passenger; because you go and buy a ticket, the passenger has nothing to do with the running of the engine, nothing to do with looking out for dangers, or anything of that kind, and you are entitled to the highest degree of care on their part. On the other hand, while you are entitled to the highest degree of care on the part of both companies, yet you must exercise ordinary care. You must not go and act in such a way that a person of ordinary prudence, judgment and care would not have acted; you must not act reckless or willful yourself, even with the highest degree of care put upon the railroad company. If you go and act in a reckless and willful way and get hurt, you couldn't hold the railroad liable for that. I repeat to you, the companies are required to exercise the highest degree of care.' This constituted error in that the Pullman Company is not a carrier, nor held to the highest degree of care, but is only required to exercise due and ordinary care in carrying out its agreements to furnish certain accommodations to such passengers of a railroad company as contract therefor."

Whatever may be the rule adhered to in some jurisdictions, this question was decided by this Court adversely to the contentions of the appellant in the case of *Caldwell v. Pullman Co.,* 132 S. C., 321; 128 S. E., 504. The facts in that case were somewhat similar to the facts of the present case. The Court in passing upon the question of negligence imputed to the defendant Pullman Company and its servants, and the degree of care required to be exercised by the defendant, quoted with approval the following from Hutchinson on Carriers, par. 1145, as follows:

"There seems to be no reason why the sleeping car company should not be held to the same high degree of account-

ability for the wrongful and tortious acts of its servants as is exercised of common carriers, and especially of passengers by rail."

It also quoted with approval the following from *Calder v. Southern Ry.*, 89 S. C., 287; 71 S. E., 841; Ann. Cas., 1913-A, 894:

"A corporation engaged in running sleeping coaches, with sections separated from the aisle only by curtains, is bound to have an employee, charged with the duty of carefully and continually watching the interior of the car, while berths are occupied by sleepers."

This Court, in the *Caldwell case,* in considering the degree of care required of sleeping car companies compared to that required of railroad companies under similar circumstances or occurrences, concluded and held:

"It is seen by this that there is no difference in that of appellant [Pullman Company] and that of a railroad for a similar occurrence. The same acts of negligence will hold either liable."

It is thus seen that the Court in that case laid down the rule that a sleeping car company is held in this state to exercise as high a degree of care, under similar occurrences and circumstances, as a railroad company itself.

The appellant asks that the "general doctrine" of the decision in the *Caldwell case,* "holding the sleeping car company to the highest degree of care," be overruled. We have given the matter careful consideration, but can find no good reason why a sleeping car company, under a similar state of facts or circumstances, should not be held to the same high degree of care as a railroad company. The Court, therefore, reaffirms the principles of law enunciated in the *Caldwell case.*

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS and BLEASE and MR. ACTING ASSOCIATE JUSTICE RAMAGE concur.

MR. JUSTICE COTHRAN concurs in result.

MR. CHIEF JUSTICE GARY did not participate.

MR. JUSTICE COTHRAN (concurring in result) : There are circumstances pointed out by Justice Stabler which justified the application to the Pullman Company of the rule of highest degree of care; but I do not think that the opinion sufficiently discriminates between injuries sustained from instrumentalities under the sole control of the company and those sustained from conditions caused by the negligence of a fellow passenger. As to these the rule of ordinary care in the discovery of the danger prevails.