13153

BONNER v. THE PULLMAN COMPANY

(159 S. E., 382)

November, 1928.

*Messrs. McKay & Manning* and *Hendersons & Salley*, for appellant,

*Messrs. Williams, Croft & Busbee,* for respondent, ▮

May 25, 1931.

The opinion of the Court was delivered by Mr. CHIEF JUSTICE BLEASE.

This action in tort was originally brought by the plaintiff against the Pullman Company and Southern Railway Company, as defendants. Before the trial, all parties consenting thereto, the Southern Railway Company was dismissed from the suit. The trial of the cause before his Honor, Circuit Judge Ramage, and a jury, in the Court of Common Pleas of Aiken County, resulted in a verdict and judgment in favor of the plaintiff against the Pullman Company for the sum of $500, actual damages.

The eight exceptions of the appellant to this Court present, as stated by its counsel, but four questions, and, without endeavoring to set out the exceptions in detail, we shall pass upon the questions involved.

The respondent had a round trip railroad ticket from Augusta, Ga., to Tampa, Fla., with return privileges expiring at midnight on June 22, 1927. On June 21st, she purchased at Jacksonville a Pullman car ticket from that city to Augusta on a train leaving Jacksonville that night over the Georgia-Southern & Florida Railway. It appears to be conceded that she had a proper ticket and was entitled to both carrier and Pullman accommodations. Soon after the train left Jacksonville, the Pullman conductor came

around to take up tickets; he looked at both railroad and Pullman tickets held by respondent, took them up, and told her that her Pullman ticket was all right. `

Respondent was tired, had the porter to make her berth down early, and soon went to sleep. A little later, she was awakened by the train conductor, who informed her that her railroad ticket had expired, and that she would have to pay her fare if she remained on the train. The respondent remonstrated, but, upon the conductor's insistence, she paid her fare to Valdosta, Ga., where the Pullman car in which she was traveling was attached to the train of the Georgia-Southern & Florida Railway and carried on to Augusta. After leaving Valdosta, the new train conductor came into the Pullman car, and upon seeing respondent's ticket raised objection that it had expired, and insisted on her paying her fare to Augusta. The train conductor finally called a general officer of the railroad company, who happened to be traveling on the train, and, on this officer's instruction, the respondent was permitted to ride on her ticket to Augusta. A few days later, the money she had paid for her fare to Valdosta was refunded to her by the Georgia-Southern & Florida Railway Company.

There is some testimony in the record tending to show that the train conductor, before he went to respondent's berth to ask her to pay a cash fare, told the Pullman conductor that respondent's ticket was out of date, and that she was not entitled to transportation on the train. The Pullman conductor then joined the train conductor in going to the berth of respondent, where the train conductor aroused her from her sleep, for the purpose of telling her that he would have to collect cash fare or put her off the train. The Pullman conductor's main part in the argument and controversy, as to the respondent's ticket, was in siding with the train conductor in the endeavor to convince the respondent that her ticket did not entitle her to transportation on the train, and that she would have to pay the fare demanded by the train conductor if she wished to remain as a passenger. As

might be expected, there is considerable variance in the testimony offered concerning the attitude and demeanor of the employees of the Pullman Company, the conductor and the porter, a colored man. The respondent testified that the Pullman conductor did not treat her with proper consideration, and that both he and the porter seemed to enjoy her embarrassed situation. The testimony of the conductor was quite to the contrary. But the trial Judge and the jury saw the witnesses, heard their testimony, and, accordingly, were in much better position than this Court to judge whether or not the respondent was oversensitive, or became offended by speech or conduct which should not have ordinarily offended a person of normal sensibilities.

It was brought out from the testimony of the conductor of the railroad train that the Pullman Company does not sell a Pullman ticket without presentation of the railroad ticket for the inspection of the Pullman agent. It was also shown by the testimony of the respondent that she paid her money in Jacksonville for the Pullman berth from Jacksonville to Augusta, and that no one questioned her right to occupy the Pullman berth. Whatever the language or conduct of the Pullman conductor may have been, or may not have been, when the respondent's ticket was questioned by the train conductor, the only thing done by the Pullman conductor to help the respondent in her situation of distress was the suggestion of the Pullman conductor that if she would pay her fare to Valdosta he would turn her over to the next train crew, and that, perhaps, they might pass her on. On leaving Valdosta, after the Pullman car had been picked up by the Georgia-Southern & Florida train, when the respondent was again being distressed over the correctness of her railroad ticket, the Pullman conductor was not present, and the Pullman porter, who was present, did nothing more to assist the respondent than to suggest that she leave her seat in the Pullman and go back into another part of the car where the discussion of her right to ride on her railroad ticket would not disturb other passengers.

The appellant alleges that there was prejudicial error on the part of the trial Judge in allowing evidence concerning the attitude and actions of the porter while the discussions as to the railroad ticket were taking place. The questions asked the respondent concerning remarks, which she said were made by the porter, were responsive to the allegations of the complaint. To one of these questions by her counsel, she answered: "That was the day conductor, Mr. Williams, who told me that I could go in the smoking car and do my talking, and that he would call Mr. W. E. French (an official of the company) who was asleep." This answer on the part of the respondent, which was objected to by appellant's counsel, would seem sufficient to clear the case of any suggestion of any improper attitude on the part of the porter, and the testimony so given cannot be regarded by us as having had the tendency to arouse racial prejudice in the minds of the jurors, as the appellant now contends.

Another question brought out from the respondent her answer that the colored porter, who was in charge of the Pullman car while the conductor was asleep, after the train left Valdosta, was present when the train conductor asked for respondent's ticket, and that the porter said: "Lady, you can go back in this other apartment so that you do not disturb the passengers, and he did not necessarily say a smoking car, but he said in the other section back there." The reason for offering this testimony was given by the respondent's counsel as follows: "The plaintiff said this morning that she didn't see this conductor until daylight, and now we want to show what the porter told her to do, because the last witness (the Pullman conductor) said his duties were being atended to by the porter." The trial Judge ruled as to the proffered testimony "That could not have been competent up until this time and until made competent by the testimony of the conductor. * * * I think it is competent under the allegation of the complaint about the porter." In this ruling we find no prejudicial error.

The position taken by the Pullman Company throughout the trial of the case, extending to the motions for nonsuit, direction of verdict, and new trial, appears in the statement made by appellant's counsel in argument over the relevancy of certain questions asked by respondent's attorney in examining respondent as a witness: "If the two conductors were acting about the validity of the railroad ticket and not about her right to travel on the Pullman car, then the Pullman Company is in no way bound, although our conductor may have been courteously or discourteously acting with the railroad conductor about a matter that only concerned the railroad." In appellant's argument before this Court, the same position is strongly stressed, authorities relied upon in support of such position being discussed at some length.

We are unwilling to subscribe to the contention of appellant. Since the case is one of novel impression in this State, we have closely examined the authorities cited to us, but we find that they do not rest on the principles that we think should be determinative of the questions brought before us by the appeal.

Under the decisions of this Court, it is the unquestionable duty of a sleeping car company to exercise the same high degree of care and diligence to protect the passengers in its care from unlawful discomforts, attacks, injuries, etc., as is required of common carriers of passengers for hire. See *Caldwell v. Pullman Co.*, 132 S. C., 321, 128 S. E., 504, and *Forbes v. Pullman Co.*, 137 S. C., 433, 135 S. E., 563. The testimony offered tending to show that the Pullman conductor was not called, that his duties were being attended to by the porter, and what the porter did under the circumstances was clearly proper for the consideration of the jury, to aid the jurors in passing upon the vital question in issue whether proper care and diligence was exercised by the Pullman Company to protect the plaintiff, as a passenger on its sleeping car, from discomfort and inconvenience.

The controlling point of decision in *Lawrence v. Pullman's Palace Car Co.,* 144 Mass., 1, 10 N. E., 723, 725, 59 Am. Rep., 58, and also in *Lemon v. Pullman Palace Car Co.* (C. C.), 52 F., 262, 263, was that the Pullman Company "could not, certainly, furnish a berth in its cars until the party requesting it had become entitled to transportation by the railroad company, as a passenger, and he must also be entitled to the transportation for such routes and distances, or under such circumstances, as the railroad company should determine to be those under which the defendant company would be authorized to furnish him with its accommodations." In the *Lawrence case,* where this pronouncement was made, the Court held that it was the province of the train conductor to decide whether the plaintiff's railroad tickets were such as to entitle him to sleeping car ticket, and, therefore, without regard to "whether accommodation was rightly refused to plaintiff or not, in the sleeping car, the refusal was the act of the railroad company's servant, and not of defendant's, whose duty it was to be guided by the train conductor."

Similarly, in the *Lemon case,* it was said: "It was not the privilege of the agent of the car company to sell a berth to any party unless he had a first-class ticket on the railroad, or a ticket which entitled him to travel in the Pullman car or in a first-class car."

The cases of *Duval v. Palace-Car Co.* (C. C. A.), 62 F., 265, 268, 33 L. R. A., 715, and *Louisville & N. R. Co. v. Fisher* (C. C. A.), 155 F., 68, 11 L. R. A. (N. S.), 926, decisions also cited in support of appellant's contention, are equally inapplicable to the case now before us. In these cases, there was no question as to either railroad or Pullman tickets; but the trains, because of a washout on the railroad line in one case, and a wreck in the other, did not carry the passengers to their destinations. As the contract of the Pullman Company was only to furnish Pullman accommodations on a train for which the passengers in the car had their tickets,

the motive power for the transportation being furnished by the railroad, it was held, in each of the cases, that the Pullman Company could not be deemed chargeable with any delict in the failure of the Pullman car to reach points called for by the tickets of the passengers. In the *Duval case,* it was pointed out that the train was turned back by command of the railroad officials; and that it was under the orders of the train conductor, "and against the objection or protest of the conductor of the (Pullman) car," that the plaintiff was turned out of the sleeping car.

The remaining case cited by appellant on this point is *Calhoun v. Pullman Co.* (C. C. A.), 159 F., 387, 16 L. R. A. (N. S.), 575. We have no difficulty in agreeing with statements of general principles contained in this decision; but the generalities of the opinion failed to discuss what is perhaps the most important of all considerations affecting the Pullman Company's liability to its passengers. The case has, therefore, but little value as a guide to sound decision in the case at bar. A railroad ticket is necessary to the purchase of a Pullman ticket. The Pullman agent has to satisfy himself, before he issues the Pullman ticket, that the purchaser has a ticket which entitles him to transportation on the train. See *Lawrence v. Pullman's Palace Car Co.* and *Lemon v. Pullman Palace Car Co., supra.* The Pullman ticket when issued becomes a contract between the Pullman Company and the purchaser of the ticket, assuring the purchaser of the comfort and convenience of a seat or berth on the sleeping car, and also assuring him that, in the enjoyment of sleeping car privileges, he will have the protection, courtesy, and consideration, which it is the duty of the Pullman employees to give, and which is part of the service implied from the sale of the ticket.

When a person having a ticket which entitles him to ride on a railroad train presents such railroad ticket for the inspection of an agent, who is authorized by the Pullman Company to sell Pullman car accommodation,

and, after inspection of the railroad ticket, the Pullman agent sells to the intending passenger a seat or berth in the Pullman car, entitling the purchaser to Pullman privileges and service, a contract arises from the payment of the passenger for the Pullman accommodations that the Pullman Company will use all the care and diligence required of passengers to see to it that the passenger is afforded the full enjoyment of the Pullman privileges, the use of his seat or berth, rest if he desires, and other conveniences and comforts of the Pullman service, including protection, as far as the Pullman Company can give it, from acts or conduct likely to subject the passenger to humiliation, indignity or embarrassment.

In the case now before us, it was the duty of the conductor of the Pullman car to give the respondent what protection and assistance he could in the controversy raised by the train conductor concerning the validity of her ticket. When she was requested to pay railroad fare again, and threatened with ejection from the train, such acts on the part of the train conductor should, at least, have been met, as in the case of *Duval v. Pullman Palace Car Co., supra,* with ";the objection or protest of the conductor of the (Pullman) car." It was also clearly the duty of the Pullman Company, after the respondent had paid under compulsion her railroad fare to Valdosta, to see that every reasonable effort was made to relieve the respondent from the prospects of further difficulty in regard to her ticket; and, there being the manifest probability of similar conditions of embarrassment occurring after the train left Valdosta, the failure of the Pullman conductor to appear, leaving the situation to be met by a porter, would seem to us evidence sufficient to go to the jury on the issue of reasonable care and diligence on the part of the Pullman Company to protect the respondent, as a passenger, in the enjoyment of the privileges which her Pullman ticket had given her.

The question of damages resulting to respondent, as a result of the acts complained of, was properly submitted to the jury under the Judge's charge, in which,

taking the charge as a whole, we find no prejudicial error. The rule governing the elements of damage that the jury may take into consideration in such case is succinctly stated in *Currie v. Davis, Agent,* 130 S. C., 408, 126 S. E., 119, 123 : "There can be no doubt that under the settled law of this jurisdiction * * * such breach of the carrier's duty to a passenger as proximately caused the infliction of injury to feelings, mental suffering, or humiliation, even in the absence of physical injury, afforded an adequate legal foundation for the award of actual or compensatory damages." The extensive note appearing in 23 A. L. R., at pages 385-388 shows many instances of cases in other jurisdictions where compensatory damages have been awarded against carriers because of breach of duty resulting in a passenger's humiliation and mental suffering.

The appellant's motion for nonsuit and directed verdict were properly refused. The granting or refusal of the motion for new trial was wholly within the discretion of the Circuit Judge, the grounds of the motion for new trial not being founded on errors of law.

The judgment below is affirmed.

MESSRS. JUSTICES COTHRAN, STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE COSGROVE concur.